UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

JOSEFINA RODRIGUEZ,

                        Plaintiff

                                      COMPLAINT
                                      <u>JURY TRIAL DEMANDED</u>

—Against—

NEW YORK CITY DEPARTMENT OF EDUCATION,
LAUREN KEARLY, individually; and
CATHIE CONDON, individually.

                        Defendants.
————————————————————————X

JOSEFINA RODRIGUEZ, by the Law Offices of Ambrose Wotorson, alleges as follows:

I. <u>INTRODUCTION</u>

1. JOSEFINA RODRIGUEZ (hereinafter, "Plaintiff") whom at all relevant times, has served as School Food Service Manager for Defendants for past five years has been subjected to Disability, National Origin and racial discrimination; and retaliation.

2. It is beyond dispute that Plaintiff was satisfactorily performing, on a full-time basis at all times relevant to this Complaint.

II. <u>PARTIES</u>

3. Plaintiff, at all relevant times, has been employed with defendant for 20 years, and she has served as School Food Services Manager with the school district for the past five years.

4. Plaintiff resides in Bronx, New York and she brings this action in her own behalf.

5. Defendants, NEW YORK CITY DEPARTMENT OF EDUCATION is a school district. It may sue and be sued, and at all relevant times, it employed Plaintiff in School Food Services Manager.

6. NEW YORK CITY DEPARTMENT OF EDUCATION has Headquarters is located at 52 Chambers Street, New York, New York 10007

7. Defendant, LAUREN KEARLEY, who is being sued in his individual capacity, at all relevant times, served as Supervising School Services Manager is a final policymaker and decisionmaker and acted under color of law and pursuant to the practices, customs and policies of the school district in Disability, National Origin and racial discrimination, and retaliation.

8. Defendant, CATHIE CONDON, who is being sued in his individual capacity, at all relevant times, served as Supervising School Services Manager is a final policymaker and decisionmaker and acted under color of law and pursuant to the practices, customs and policies of the school district in Disability, National Origin and racial discrimination; and retaliation.

III. JURISDICTION

9. This Court has jurisdiction over this matter under 42 U.S.C. Sections 12101, et seq., 1983, and 1981; and 29 U.S.C. Section 2615 (a)(2).

10. Venue is proper because the acts complained of occurred in this judicial district.

11. Moreover, this action was brought within 90 days after Plaintiff's receipt of a right to sue letter from the U.S. Equal Opportunity Commission (E.E.O.C).

IV. FACTUAL AVERMENTS

12. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

13. At all relevant times, for most of Plaintiff spotless 20-year employment, she has had a formal title of Assistant Supervisor and has performed as a School Food Service Manager.

14. Her performance has been fully satisfactory at all relevant times.

15. Yet, Plaintiff's immediate supervisor, Kearley, on several occasions, and in Plaintiff's presence, has mimicked the tone and foreign accents of employees who are from foreign countries. Notably, Kearley is a white, American-born woman without a foreign accent.

16. In or about June 2019, Plaintiff and Kearley sat in on an Interview with an Indian immigrant with a strong Indian accent, who had all of the qualifications necessary for a job he was interviewing for.

17. All of the other candidates, who were American-born, were asked four questions, but Kearley asked the Indian-born candidate about 30 questions. When the candidate left, Ms. Kearley and another interviewing Supervisor, Nelson Quiles, joked about, mocked, mimicked and laughed at the candidate's accent to the point of tears.

18. Plaintiff found Kearley's discriminatory behavior offensive and disturbing.

19. In or about October 2019, at 40 Irvington Place, New York, NY, Room 101, in Plaintiff's presence, Kearley had a phone conversation with Obadina Olufunke, a Food Safety Supervisor whom Plaintiff knows, and who originates from West Africa, on speaker phone.

20. After the conversation ended, Ms. Kearley, mocked and mimicked Ms. Olufunke's accent, claiming to Plaintiff, derisively, that she was had difficulty understanding that accent.

21. Plaintiff found Kearley's discriminatory behavior offensive and disturbing.

22. In or about February 2020, at 40 Irving Place, New York, NY, Room 101, for example, Mr. Stephen Cheung, a School Food Service Manager, originating from Asia, met with Plaintiff and Ms. Kearley to explain that he was being transferred to another location.

23. After Mr. Cheung left the meeting, Kearley mocked and mimicked Mr. Cheung, by talking in accent that he has.

24. Plaintiff found Kearley's discriminatory behavior offensive and disturbing.

25. Plaintiff has continuously complained, since 2018, to the Manhattan Regional Director, Cathie Condon, that her immediate supervisor, Kearley, a District Supervisor, has engaged in discriminatory behavior in her presence, thereby creating a pervasive hostile work environment.

26. When Kearley learned in that Plaintiff had complained to the Regional Director, Cathie Condon, about such discrimination, Kearley created a hostile work environment for Plaintiff and did everything in her power to set Plaintiff up for failure by ordering her to conduct more sites to visit than usual.

27. Indeed, Kearley suddenly tasked Plaintiff to visit 2 – 3 different schools each day, four times a week, to report back to the Field Office after visiting these schools and to communicate her findings via email to the School Food Service Managers and to defendant Kearley after her school visits.

28. These added tasks made it difficult for Plaintiff to complete other assigned tasks and to operate the field office that the Regional Director, Condon, had assigned her to.

29. Plaintiff was typically left with a single day each week within which to complete paperwork, meet with subs and to complete timecards among other duties.

30. Prior to that, Plaintiff was tasked to visit no more than 2 schools a day and she typically was able to stay at a school she had visited completing a thorough site inspection. This procedure was in line with other similarly situated Assistant Supervisors performing as School Food Service Managers did.

31. Plaintiff engaged in protected activity and complained to Condon that Kearley was retaliating against her because she had previously complained to Condon about Kearley's discriminatory treatment.

32. Plaintiff explained to Condon that the Kearley's retaliatory treatment had been taken in the form of adding an unusually large amount of additional schools to her visit schedule.

33. Condon made no effort whatsoever to investigate Plaintiff's retaliation claims, and quickly dismissed them, telling Plaintiff, "…You can do it. All you need to do is go in and out of the schools and manage the field office with phone calls until you get there".

34. Although Plaintiff had a formal title of Assistant Supervisor and was performing in School Food Services Manager's role, she was never afforded the respect and recognition in the district as the Assistant Supervisor.

35. Indeed, Plaintiff's recognition and treatment sharply contrasted with that of a similarly situated Assistant Supervisor, Michael Barr, a white, non-Hispanic male, whose input and ideas were sought out, who was allowed to make managerial decisions and he was regularly invited to supervisor meetings.

36. Moreover, Kearley frequently belittled Plaintiff. As an example, on March 16, 2020, individual defendant, Kearley, during a Microsoft Teams conversation with District 03 Supervisor, Nelson Quiles, exhibited their animus towards Plaintiff, and discussed how to create a hostile employment action against Plaintiff:

> Mr. Quiles: *"Give her shit to do..."*
>
> Ms. Kearley: *"Give* me *ideas bro..."*
>
> Mr. Quiles: *"Why don't you take it over to prove a point. Like it took you sooo many months but it took me a day to settle kind of thing."*
>
> Ms. Kearley replied, *"What else can I have her do?"*
>
> Later, Ms. Kearley stated to Mr. Quiles, *"lmao. Karma is amazing. The sub that she just spent 5 hours preparing a writeup for resigned Joi"*

37. Condon was aware that English is a second language for Plaintiff, but still found it funny that it took Plaintiff some five hours to prepare a write up.

38. On or about March 17, 2020, Plaintiff tearfully complained, once again, to her penultimate supervisor, Condon, about discrimination and hostilities directed against her from her immediate supervisor, Kearley.

39. Condon did nothing to investigate the discrimination and hostile work environment claims that Plaintiff advanced, and instead, merely gave Plaintiff a "post-it" with a list of School Food Service Manager openings in other locations within the Department of Education, and suggested

40. The following week, Plaintiff's physician advised her to quarantine due to a diagnosis of Covid-19, a disability and serious medical condition that affects one or

more major life functions, including breathing.

41. Plaintiff requested and was granted, a medical leave of absence due to Covid-19 for eight weeks. This leave was taken under the Family Medical Leave Act, and at the time, Plaintiff had performed 1250 hours withing the preceding 12 months.

42. Plaintiff kept defendant Condon up to date with doctor's notes.

43. However, Condon ordered Plaintiff to submit copies of her lab results.

44. As ordered, Plaintiff submitted copies of her lab reports proving that she had been afflicted with Covid-19.

45. On May 17, 2020, Plaintiff informed her immediate supervisor, Kearley, that she had been cleared by her physicians to return to work.

46. Yet, Kearley did not respond to Plaintiff.

47. Instead, Plaintiff from defendant Condon on the evening of May 17, 2020 ordering Plaintiff to report to Condon's field office the next day.

48. On May 18, 2020, when Plaintiff arrived at Condon's office, she was given a letter stripping her of her Assistant Supervisor's functions and demoting her to a Level I Manager's position with substantially less responsibilities, and substantially less supervisory functions.

49. Later in mid-May 2020, while all other similarly situated employees continued to work from home because of the Pandemic, defendant Condon, who is neither a physician nor a nurse, and whom upon information and belief, does not have any certified or licensed medical training, ordered that Plaintiff continue to physically report to work, because, as she told Plaintiff's new supervisor, Abernathy, Plaintiff had "built immunity to the virus".

50. In so stating, Condon basically disclosed Plaintiff's confidential medical status

to Abernathy when claimed that Plaintiff has built immunity to the virus".

51. Plaintiff continued to be assigned an unusually large number of school visits, but without her Assistant Supervisor title, and without much of her previous supervisory responsibilities.

52. In any event, qualified immunity is not available to the individual Defendants herein, as Disability, National Origin and Racial Discrimination, along with retaliation.in government employment are clearly established and well-settled.

53. Plaintiff has suffered humiliation and extreme mental anguish as a proximate result of Defendants' acts and omissions, including having to treat with mental healthcare professionals and being prescribed psychotropic medications to treat anxiety and depression, ailments that were proximately caused by Defendants' actions.

54. Plaintiff's good name and reputation have also been damaged as a proximate result of Defendants' actions against Plaintiff.

55. Plaintiff has a not been able to ameliorate Plaintiff's employment situation despite Plaintiff's good faith efforts to do so.

56. Individual Defendants' acts were in reckless indifference to Plaintiff's rights, and were intentional, entitling Plaintiff to punitive or liquidated damages, where available, generally, and where available, specifically, as against the individual Defendants herein.

V. CAUSES OF ACTION

FIRST CAUSE OF ACTION
42 U.S.C. Section 12101 et seq. – Disability Discrimination.

57. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

58. Defendants by, engaged in Disability Discrimination as made actionable by 42 U.S.C. Section 12101et seq. by demoting Plaintiff and by otherwise treating her in disparate manner on account of her Covid-19 diagnoses.

SECOND CAUSE OF ACTION
42 U.S.C. Section 2000e – National Origin Discrimination

59. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

60. Defendant, New York City Department of Education, engaged in National Origin Discrimination as made actionable by 42 U.S.C. Section 2000e, when it allowed Plaintiff to be subjected disparate treatment and a hostile work environment on account of her Dominican National Origin.

THIRD CAUSE OF ACTION
42 U.S.C. Section 2000e  –  Racial Discrimination.

61. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

62. Defendant, New York City Department of Education engaged in racial discrimination by allowing Plaintiff to be subjected to disparate treatment and a hostile work environment on account of her Afro-Hispanic race, as made actionable by 42 U.S.C. Section 2000e.

FOURTH CAUSE OF ACTION
42 U.S.C. Section 1983 – Racial Discrimination.

63. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

64. Defendant by New York City Department of Education, engaged in Racial Discrimination in violation of the 14th Amendment by allowing Plaintiff to be subjected to disparate treatment and a hostile work environment, because of her Afro-Hispanic race, as made actionable by 42 U.S.C. Section 1983.

FIFTH CAUSE OF ACTION

42 U.S.C. Section 1981, as Secured by Section 1983 – Racial Discrimination and Prior Alienage

65. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

66. Defendants, engaged in Racial Discrimination by allowing Plaintiff to be subjected to disparate treatment and a hostile work environment, because of her Afro-Hispanic race and prior alienage, as made actionable by 42 U.S.C. Section 1981, and as secured by Section 1983.

SIXTH CAUSE OF ACTION
42 U.S.C. Section 2000e – Retaliation

67. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

68. Defendant New York City Department of Education, engaged in retaliation by subjecting Plaintiff to disparate treatment and a hostile work environment because she engaged in protected activities in opposing racial discrimination as made actionable by 42 U.S.C. Section 2000e.

SEVENTH CAUSE OF ACTION
42 U.S.C. Section 1983 – Retaliation.

69. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

70. Defendants engaged in retaliation by subjecting Plaintiff to disparate treatment and a hostile work environment, in violation of the 14th Amendment, because Plaintiff engaged in protected activities in opposing racial discrimination as made actionable by 42 U.S.C. Section 1983.

EIGTHT CAUSE OF ACTION
42 U.S.C. Section 1981 as secured by Section 1983 – Retaliation.

71. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

72. Defendants engaged in retaliation by subjecting Plaintiff to disparate treatment and a hostile work environment because Plaintiff engaged in protected activities in opposing racial discrimination and prior alienage discrimination as made actionable by 42 U.S.C. Section 1981, and as secured by Section 1983.

<u>NINTH CAUSE OF ACTION</u>
29 U.S.C. Section 2615 (a)(2) – Family Medical Leave Act – Retaliation

73. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

74. Defendants by demoting Plaintiff after her return from approved FMLA leave, and because she took FMLA leave, violated 29 U. S. C. Section 2615 (a)(2).

VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that this Court grant judgment to Plaintiff containing the following relief:

   a. An award of damages for humiliation, mental pain and suffering associated with Defendants' mistreatment of Plaintiff.

   b. An award of damages for past and future loss of compensation as a consequence Defendants' mistreatment of Plaintiff.

   c. An award of punitive and/or liquidated damages, where available, generally, and where available, specifically, as against as the individual Defendants, as a consequence of their intentional, willful and egregious mistreatment of Plaintiff and/or their reckless disregard for Plaintiff's civil rights.

   d. The costs of this action and Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

   e. Such other and further relief as this Court may deem just and proper.

Dated:       New York, New York
               April 20, 2021

                                            Respectfully Submitted
                                            _____
                                            *Ambrose W. Wotorson, Jr., Esq.*
                                            Law Offices of Ambrose Wotorson
                                            225 Broadway, 41st Floor
                                            New York, New York 10007
                                            212-884-5985
                                            Loaww1650@aol.com