21 Civ. 3561 (MKV)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEFINA RODRIGUEZ,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
LAUREN KEARLY, individually; and CATHIE
CONDON, individually,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

*GEORGIA M. PESTANA*
*Corporation Counsel of the City of New York*
*Attorney for Defendants DOE & Lauren Kearley*
*100 Church Street, Room 2-184*
*New York, New York  10007*

*Of Counsel:  Angela M. Wanslow*
*Tel.:  (212) 356-2441*
*Matter No.:  2021-011295*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ............................................................................................................ 5

POINT I ..................................................................................................... 5

    PLAINTIFF'S CLAIMS AGAINST DEFENDANT
    CONDON MUST BE DISMISSED FOR LACK
    OF PERSONAL JURISDICTION ............................................... 5

POINT II ................................................................................................... 7

    PLAINTIFF'S SEX DISCRIMINATION CLAIMS
    MUST BE DISMISSED FOR FAILURE TO
    EXHAUST HER ADMINISTRATIVE REMEDIES ............................... 7

POINT III .................................................................................................. 8

    PLAINTIFF'S CLAIMS UNDER TITLE VII
    OCCURRING BEFORE OCTOBER 18, 2019 ARE
    TIME-BARRED ....................................................................... 8

POINT IV .................................................................................................. 8

    THERE IS NO INDIVIDUAL LIABILITY
    UNDER TITLE VII OR THE ADA ............................................. 8

POINT V ................................................................................................... 9

    PLAINTIFF FAILS TO STATE A CLAIM  FOR
    DISCRIMINATION UNDER TITLE VII,
    SECTION 1983, OR THE ADA .................................................. 9

    A.   Analytical Framework For Disparate Treatment
    Discrimination Claims Pursuant to Title VII and
    Section 1983 ....................................................................... 9

    B.   Alleged Diminution of Plaintiff's Supervisory
    Status ............................................................................... 10

    C.   Plaintiff's Alleged May 2020 "Demotion" ....................................... 13

    D.   Alleged March 2021 Failure to "Promote"
    Plaintiff .............................................................................. 15

**Page**

    E.   Plaintiff's Disability Discrimination Claims
Under the ADA ................................................................. 15

    F.   Alleged Hostile Work Environment Claims ..................................... 16

POINT VI ..................................................................................... 20

PLAINTIFF FAILS TO STATE A CLAIM FOR
RETALIATION UNDER TITLE VII, SECTION
1983, THE ADA, AND THE FMLA ........................................ 20

POINT VII .................................................................................... 24

PLAINTIFF FAILS TO STATE A CLAIM FOR
MUNICIPAL LIABILITY UNDER SECTION
1983 ............................................................................. 24

POINT VIII ................................................................................... 25

PLAINTIFF'S SECTION 1981 CLAIMS SHOULD
BE DISMISSED ............................................................... 25

CONCLUSION ............................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002)......................................................................................16, 17

*Algarin v. City of N.Y.*,
   No. 12 Civ. 1264 (LTS), 2012 U.S. Dist. LEXIS 146190 (S.D.N.Y. Oct. 10,
   2012) (Section 1983 discrimination claims are evaluated under the Title VII
   framework)........................................................................................................................10

*Allen v. N.Y. City Dept. of Envtl. Protection*,
   51 F. Supp. 3d 504 (S.D.N.Y. 2014)...............................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................................9, 14

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................9

*Bermudez v. City of New York*,
   783 F. Supp. 2d 560 (S.D.N.Y. 2011)...............................................................................25

*Bernheim v. N.Y. City Dept. of Educ.*,
   No. 19-CV-9723 (VEC) (JLC), 2021 U.S. Dist. LEXIS 118948 (S.D.N.Y.
   June 25, 2021)....................................................................................................................23

*Brennan v. Metropolitan Opera Ass'n*,
   192 F.3d 310 (2d Cir. 1999)..............................................................................................17

*Butts v. N.Y. City of Dep't of Educ.*,
   No. 16-CV-5504 (NGG)(RML), 2018 U.S. Dist. LEXIS 170195 (S.D.N.Y.
   Sept. 28, 2018) ..................................................................................................................12

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986)...........................................................................................................24

*City of Okla. v. Tuttle*,
   471 U.S. 808 (1985)...........................................................................................................24

*Daniels v. City of New York*,
   No. 17 Civ. 9960 (LGS), 2019 U.S. Dist. LEXIS 8604 (S.D.N.Y. Jan. 17,
   2019) ..................................................................................................................................13

**<u>Cases</u>** <u>Pages</u>

*Day v. City of N.Y.*,
    15 Civ. 4399 (GBD)(HBP), 2015 U.S. Dist. LEXIS 161206 (S.D.N.Y. Nov.
    30, 2015) (Section 1983) ..........................................................................................20

*Dudley v. N.Y.C. Housing Auth.*,
    No. 12 Civ. 2771(PGG), 2014 U.S. Dist. LEXIS 140052, (S.D.N.Y. Sept. 30,
    2014) ......................................................................................................................16

*Earl v. Good Samaritan Hosp. of Suffern*,
    No. 20 CV 3119 (NSR), 2021 U.S. Dist. LEXIS 186182 (S.D.N.Y. Sep. 28,
    2021) ......................................................................................................................16

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) .................................................................................................9

*Fields v. N.Y. City Health & Hosp. Corp.*,
    No. 17-CV-6042 (PKC) (CLP), 2018 U.S. Dist. LEXIS 121821 (E.D.N.Y.
    July 20, 2018) .........................................................................................................22

*Fox v. Costco Wholesale Corp.*,
    918 F.3d 65 (2d Cir. 2019) ......................................................................................17

*Galabya v. N.Y. City Bd. of Educ.*,
    202 F.3d 636 (2d Cir. 2000) ....................................................................................11

*Gonzalez v. City of N.Y.*,
    377 F. Supp. 3d 273 (S.D.N.Y. 2019) ....................................................................25

*Hardy v. City of N.Y.*,
    2018 U.S. Dist. LEXIS 172891 (S.D.N.Y. Oct. 4, 2018) .........................................8

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993) ..................................................................................................17

*Isbell v. City of N.Y.*,
    316 F. Supp. 3d 571 (S.D.N.Y. 2018) ....................................................................18

*Ivanov v. NY City Tr. Auth.*,
    13 Civ. 4280 (PKC), 2014 U.S. Dist. LEXIS 79614 (S.D.N.Y. June 4, 2014) .........8

*Langella v. Mahopac Cent. Sch. Dist.*,
    No. 18-cv-10023 (NSR), 2020 U.S. Dist. LEXIS 95588 (S.D.N.Y. May 31,
    2020) ......................................................................................................................15

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) ....................................................................................10

**Cases**                                                                                          **Pages**

*Mazurkiewicz v. NY City Health & Hosps. Corp.*,
   No. 09 Civ. 5962 (WHP), 2010 U.S. Dist. LEXIS 107697 (S.D.N.Y. Sep. 16,
   2010) ...................................................................................................................22

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...........................................................................................10

*Morey v. Windsong Radiology Group, P.C.*,
   794 F. App'x 30 (2d Cir. 2019) (ADA)..............................................................20

*Opoku v. Brega*,
   No. 15-CV-2213 (KMK), 2016 U.S. Dist. LEXIS 136038 (S.D.N.Y. Sept. 30,
   2016) ...................................................................................................................18

*Polanco v. City of N.Y.*,
   No. 16-CV-09196-LTS, 2018 U.S. Dist. LEXIS 108337 (S.D.N.Y. June 27,
   2018) .....................................................................................................................8

*Ragusa v. Malverne Union Free Sch. Dist.*,
   381 F. App'x 85 (2d Cir. 2010) .........................................................................20

*Regan v. Pelham*,
   19 Civ. 7987 (NSR), 2021 U.S. Dist. LEXIS 52247 (S.D.N.Y. Mar. 19, 2021) ..................5, 6

*Reyes v. Westchester County Health Care Corp.*,
   No. 19-CV-08916 (PMH), 2021 U.S. Dist. LEXIS 18659 (S.D.N.Y. Jan. 29,
   2021) ...................................................................................................................20

*Shultz v. Congregation Shearith Israel*,
   867 F.3d 298 (2d Cir. 2017).............................................................................11

*Sletten v. LiquidHub, Inc.*,
   13 Civ. 1146 (NRB), 2014 U.S. Dist. LEXIS 94697 (S.D.N.Y. July 10, 2014)....................14

*Smith v. N.Y. City Dept. of Educ.*,
   2019 U.S. Dist. LEXIS 204645 (S.D.N.Y. Nov. 22, 2019) ..................................14

*Spencer v. Global Innovative Group*,
   No. 17-CV-7604 (PGG) (BCM), 2021 U.S. Dist. LEXIS 32738 (S.D.N.Y.
   Feb. 19, 2021) ...............................................................................................18, 19

*Sullivan v. Newburgh Enlarged Sch. Dist.*,
   281 F. Supp. 2d 689 (S.D.N.Y. 2003)...............................................................25

*Tanvir v. N.Y.C. Health & Hosps. Corp.*,
   480 F. App'x 620 (2d Cir. 2012) .........................................................................7

**Cases**                                                                            **Pages**

*Tousst v. City of N.Y.*,
    2020 U.S. Dist. LEXIS 125968 (S.D.N.Y. June 29, 2020).......................................7

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir 2015).....................................................................................11

*Wray v. City of N.Y.*,
    490 F.3d 189 (2d Cir. 2007)..................................................................................24

*Wright v. City of Syracuse*,
    611 F. App'x 8 (2d Cir. 2015) ..............................................................................24

*Ziyan Shi v. N.Y. Dept. of State, Div. of Licensing Servs.*,
    393 F. Supp. 3d 329 (S.D.N.Y. 2019)..............................................................21, 24

**Statutes**

29 U.S.C. § 2614(a)(1)...................................................................................................23

42 U.S.C. § 2000e-5(e) ...................................................................................................8

CPLR § 308(1)-(2) ..........................................................................................................6

Fed. R. Civ. P. 4.............................................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JOSEFINA RODRIGUEZ,

                                        Plaintiff,

            -against-                                    21 Civ. 3561 (MKV)

NEW YORK CITY DEPARTMENT OF
EDUCATION, LAUREN KEARLY, individually;
and CATHIE CONDON, individually,
                                        Defendants.

------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Josefina Rodriguez, a current School Food Service Manager ("SFSM") with Defendant New York City Department of Education ("DOE"), brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 (a)(2), and 42 U.S.C. §§ 1981 and 1983.  Plaintiff alleges that her direct supervisor Defendant Lauren Kearley[1] discriminated against her on the basis of her race, sex, national origin, and disability by diminishing her supervisory status and subjecting her to a hostile work environment.  Plaintiff also alleges that Defendant Cathie Condon demoted her to a role with less responsibility and refused to hire for an available supervisory role in retaliation for her discrimination complaints and for exercising her rights under the FMLA.  She also alleges that she was subjected to disability discrimination when she was directed to return to the office after recovering from Covid-19.

---

[1] Defendant Kearley's name is misspelled in Plaintiff's Amended Complaint as "Kearly."

For the reasons set forth herein, Defendants now move to dismiss the Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6).

## STATEMENT OF FACTS[2]

Plaintiff has been a SFSM with Defendant DOE since 2001 and self-identifies as a Hispanic woman from the Dominican Republic.  *See* Am. Compl., ECF Dkt. No. 3, ¶¶ 13—14. She alleges that between May 2017 and May 2020, she served as an Assistant Supervisor SFSM. *See id.* ¶ 16.  Plaintiff alleges that in or around March 2018, Defendant Lauren Kearley, Associate SFSM, became her direct supervisor and instructed her that she would communicate directly with school food service contacts going forward, and that Plaintiff should instead focus on school site visits.  *See id.* ¶¶ 7, 19, 22—24, 25.  She also alleges that around this time Defendant Kearley once "cut her off" in a managers meeting and stated that she "does not know what she is talking about."  *See id.* ¶ 26.

Plaintiff alleges that in or around June 2018, she complained to Defendant Cathie Condon, Manhattan Regional Director, that she was being treated differently than Assistant Supervisor Michael Barr, who she identifies as a non-Hispanic, African-American, American-born male.  *See id.* ¶¶ 8, 28.  Specifically, Plaintiff alleges that Barr was permitted to direct other SFSMs and communicate directly with district contacts while she was not.  *See id.* ¶¶ 29—30. She does not allege that Defendant Kearley supervised Michael Barr.  According to Plaintiff, she told Defendant Condon that she believed this disparate treatment was based on her accent, national origin, and sex, because Defendant Kearley would imitate her accent and that of other

---

[2] This statement of facts is derived from the allegations in the Amended Complaint herein, *see* ECF Dkt. No. 3, and the material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only.  In addition, Defendants rely upon Exhibit A, annexed to the Declaration of Assistant Corporation Counsel Angela M. Wanslow, dated November 18, 2021.  *See DiFolco v. MSNBC Cable*, L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

employees.  *See id.* ¶¶ 31—32.  Plaintiff alleges that, in response to her complaints, Defendant Condon responded that she would "take care of it."  *See id.* ¶ 33.

Plaintiff alleges generally that Defendant Kearley subjected her to a hostile work environment by mimicking her accent and that of other employees.  *See id.* ¶ 13.  She provides details only for the alleged incidents involving other employees, which she alleges occurred in or around June 2019, October 2019, and February 2020.  *See id.* ¶¶ 35—39,  51—56.  Plaintiff also alleges that Defendant Kearley "disrespectfully yelled" at her in or around June 2019.  *See id.* ¶ 41.

According to Plaintiff, she complained to Defendant Condon in or around June 2019, and thereafter reported to Defendant Kearley that she had made discrimination complaints against her since 2018.  *See id.* ¶ 44.  After reporting her complaints, Plaintiff alleges that Defendant Kearley created an "even more hostile work environment."  *See id.* ¶ 45.  She alleges that prior to June 2019, she was expected to complete two (2) school site visits per day, but that this expectation was increased to two (2) to three (3) visits per day.  *See id.* ¶¶ 46, 49.  She also alleges that Defendant Kearley ordered her to report back to the Field Office after her site visits and communicate her findings via email to the other SFSMs and Defendant Kearley after each school visit.  *See id.* ¶ 46.  In or around September 2019, Plaintiff alleges that she complained to Defendant Condon that Defendant Kearley was retaliating against her for reporting her alleged discriminatory treatment by assigning her more school site visits than usual.  *See id.* ¶¶ 59—60.  Plaintiff alleges that Defendant Condon responded by stating, "You can do it. All you need to do is go in and out of the schools and manage the field office with phone calls until you get there." *See id.* ¶ 61.

In support of her allegation that Defendant Kearley would often harass her, Plaintiff alleges that on or around March 16, 2020, Defendant Kearley and District 3 Supervisor Nelson Quiles engaged in a Microsoft Teams conversation discussing Plaintiff, in which Defendant Kearley stated, *inter alia*, "Give me ideas bro," to which Quiles responded, "Why don't you take it over to prove a point. Like it took you sooo many months but it took me a day to settle kind of thing." *See id.* ¶¶ 64—65.

On or around March 17, 2020, Plaintiff alleges that she once again complained to Defendant Condon that Defendant Kearley was discriminating against her and acting hostile toward her. *See id.* ¶ 66. Plaintiff alleges that Defendant Condon "did nothing to investigate" her claims but did give her a Post-It slip with a list of open non-supervisory DOE SFSM positions in other districts. *See id.* ¶ 67. The following week, she alleges she was diagnosed with Covid-19 and granted FMLA leave for eight (8) weeks to recover from her illness. *See id.* ¶¶ 68—70.

When Plaintiff returned to work on or around May 18, 2020, she alleges that she was demoted to a "Level I Manager" position with "substantially less responsibilities and substantially less supervisory functions." *See id.* ¶ 76. She further alleges that in "mid-May 2020," other employees were permitted to work from home but she was directed to report to work in person. *See id.* ¶ 77. Plaintiff alleges that Defendant Condon informed her new supervisor Abernathy that Plaintiff was required to report to work in person because she had "built up immunity to the virus," thereby disclosing her medical status. *See id.* ¶¶ 78—79.

In or around August 2020, Plaintiff alleges that she filed complaints with the New York State Division of Human Rights ("SDHR") and the United States Equal Employment Opportunity Commission ("EEOC") alleging disability, national origin, and racial

4

discrimination, and retaliation.  *See id.* ¶ 80.  Thereafter, Plaintiff alleges that she took another

FMLA leave in November 2020, to care for her sister.  *See id.* ¶¶ 83—84.  While on leave, she

alleges she applied for a vacant Assistant Supervisor position in District 6 on or around January

25, 2021.  *See id.* ¶ 85.  She alleges that upon return from leave in February 2021, she was

assigned an "unusually large number of schools to manage."  *See id.* ¶ 86.  On or around March

8, 2021, Plaintiff alleges that she was interviewed for the District 6 Assistant Supervisor position

and that Defendant Condon was on the interview panel.  *See id.* ¶¶ 89—90.  Plaintiff alleges that

Defendant Condon remarked to "one or more other people" that she "had the nerve to apply,"

and that she was "not going to get it."  *See id.* ¶ 92.  She further alleges, "upon information and

belief," that, compared to other applicants for the position, she was asked more questions during

her interview, *see id.* ¶¶ 93—94, and that she was more qualified and experienced than the

applicant ultimately selected.  *See id.* ¶¶ 95—96.

On or around April 2021, Plaintiff alleges she took a medical leave of absence.

*See id.* ¶ 97.  On April 21, 2021, Plaintiff filed her original complaint in the instant matter.  *See*

ECF Dkt. No. 1.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS AGAINST DEFENDANT CONDON MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION[3]

"Before a federal court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied."  *Regan v. Pelham*, 19 Civ.

---

[3] Corporation Counsel has not appeared or made any representation decision with respect to Defendant Cathie Condon, but makes this argument on her behalf.

7987 (NSR), 2021 U.S. Dist. LEXIS 52247, at *8 (S.D.N.Y. Mar. 19, 2021) (quoting *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir.2006)).  Plaintiff bears the burden of making a prima facie case of proper service through "specific factual allegations and any supporting materials."  *See id.* at *9.  However, "conclusory statements are not sufficient to overcome a defendant's sworn affidavit that service was improper."  *See id.* (citing *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)).

Under Fed. R. Civ. P. 4 (m), a defendant must be served within 90 days after the complaint is filed.  *See* Fed. R. Civ. P. 4(m).  Further, under Fed. R. Civ. P. 4(e), Plaintiff may serve process on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."  *See* Fed. R. Civ. P. 4(e)(1).  Under the New York State Civil Practice Law and Rules ("CPLR") § 308, service of process may be made upon an individual by (1) delivering the summons within the state to a person of suitable age and discretion at the actual place of business of the party to be served, or (2) mailing the summons to the party's last known residence or her actual place of business.  *See* CPLR § 308(1)-(2).

Here, Plaintiff filed an Affidavit of Service signed by Shadrach Laguerre, who stated that on June 9, 2021, at 4:30 P.M., he served a copy of the Summons and Complaint on "Farrah (Co-Worker)" at Defendant Cathie Condon's "actual place of business/employment" at "2581 7th Avenue, Room 131, New York, New York 100396 [sic]."  *See* ECF Dkt. No. 9.  Laguerre further swears that he mailed a copy of the Summons and Complaint to the same address.  *See id.*  The Affidavit of Service was notarized two months later on August 10, 2021. *See id.*

However, Defendant Condon has submitted a signed declaration, produced herewith, stating that she was not served with the Summons or Complaint either by mail or at her office, that there is no person named "Farrah" at her office on 2581 7th Avenue, and that, to her knowledge, no one in her office received any papers on her behalf around this time.  *See* Nov. 18, 2021 Decl. of Cathie Condon.  Under Rule 4(m), service was required on Defendant Condon on or before September 7, 2021.  *See* Fed. R. Civ. P. 4(m).  Thus, without appearing on behalf of Defendant Condon, Defendants DOE and Kearley now move the court to dismiss her for lack of personal jurisdiction.  *See id.*; *see also* Fed. R. Civ. P. 12(b)(5).

### POINT II

**PLAINTIFF'S SEX DISCRIMINATION CLAIMS MUST BE DISMISSED FOR FAILURE TO EXHAUST HER ADMINISTRATIVE REMEDIES**

A plaintiff must first exhaust administrative remedies by presenting her claims in a complaint to the EEOC or the equivalent state or city agency before bringing Title VII claims in federal court.  *See Tanvir v. N.Y.C. Health & Hosps. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012).  "A plaintiff may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in her EEOC charge."  *Tousst v. City of N.Y.*, 2020 U.S. Dist. LEXIS 125968, at *5 (S.D.N.Y. June 29, 2020).

Plaintiff filed a verified complaint with the SDHR on August 13, 2020.  *See* Aug. 13, 2020 Verified SDHR Compl. ("SDHR Complaint"), *Josefina Rodriguez v. City of New York*, Case No. 10208871-20-E-DRON-E, annexed to the Nov. 18, 2021 Decl. of Angela M. Wanslow ("Wanslow Decl.") as Ex. "A."  Plaintiff's SDHR complaint alleged "unlawful discriminatory practices in relation to employment because of disability, national origin, race/color, opposed discrimination/retaliation."  *See id.* at 7.  However, Plaintiff now brings additional claims of sex

discrimination under Title VII.  *See, e.g.,* Am. Compl. ¶ 32.  Plaintiff has failed to exhaust her administrative remedies with respect to this claim and thus it must be dismissed.

## POINT III

### PLAINTIFF'S CLAIMS UNDER TITLE VII OCCURRING BEFORE OCTOBER 18, 2019 ARE TIME-BARRED

To claim a violation of Title VII a charge of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory act.  *See* 42 U.S.C. § 2000e-5(e); *Polanco v. City of N.Y.*, No. 16-CV-09196-LTS, 2018 U.S. Dist. LEXIS 108337, at *8 (S.D.N.Y. June 27, 2018).  Plaintiff alleges she filed her EEOC Complaint "in or around August 2020."  *See* Am. Compl. ¶ 80.  Plaintiff filed her EEOC charge concurrently with her SDHR complaint on August 13, 2020. *See* Ex. A, SDHR Complaint, at 1.  Further, 300 days before August 13, 2020, is October 18, 2019.  "Title VII 'precludes recovery for discrete acts of discrimination . . . that occur outside the statutory time period.'"  *Hardy v. City of N.Y.*, 2018 U.S. Dist. LEXIS 172891, at *24—25 (S.D.N.Y. Oct. 4, 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).  As such, all of Plaintiff's Title VII claims based on allegations occurring before October 18, 2019, are time barred, including, but not limited to, her hostile work environment claims based on Defendant Kearley allegedly mocking Plaintiff's accent and the accent of others between June 2018 and June 2019.

## POINT IV

### THERE IS NO INDIVIDUAL LIABILITY UNDER TITLE VII OR THE ADA

Individual employees may not be held liable for discrimination or retaliation under Title VII or the ADA.  *See Ivanov v. NY City Tr. Auth.*, 13 Civ. 4280 (PKC), 2014 U.S. Dist. LEXIS 79614, at *13—14 (S.D.N.Y. June 4, 2014) (citing *Tomka v. Seiler Corp.*, 66 F.3d

1295, 1314 (2d Cir. 1995), abrogated on other grounds by *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998),  and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ("Because an individual is not an 'employer' under Title VII, an individual is also not an 'employer' under the ADA and, therefore, may not be liable for disability discrimination."). As such, Plaintiff's Title VII and ADA discrimination and retaliation claims against the individually-named Defendants must be dismissed.

**POINT V**

**PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION UNDER TITLE VII, SECTION 1983, OR THE ADA**

**A.      Analytical Framework For Disparate Treatment Discrimination Claims Pursuant to Title VII and Section 1983**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (internal citation omitted). A plaintiff must plead facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully . . . [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" and must, therefore, be dismissed. *See id.*; *Twombly*, 550 U.S. at 557, 570.

In the context of an employment discrimination complaint, this "requirement to plead facts is assessed in light of the presumption that arises in the plaintiff's favor under

*McDonnell Douglas* in the first stage of the litigation." *See Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  As such, absent direct evidence of discrimination, to survive a motion to dismiss, a complaint of discrimination under Title VII, Section 1983, and the ADA "must be plausibly supported by facts alleging . . . that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 311 (emphasis added); *Algarin v. City of N.Y.*, No. 12 Civ. 1264 (LTS), 2012 U.S. Dist. LEXIS 146190, at *10 (S.D.N.Y. Oct. 10, 2012) (Section 1983 discrimination claims are evaluated under the Title VII framework).

Defendants assume, solely for the purposes of this motion to dismiss, that Plaintiff in the member of her purported protected classes (race, sex, and national origin), and that she was qualified for the SFSM position.  However, Plaintiff fails to allege facts sufficient to plead that the alleged diminution of her supervisory status and "demotion" were adverse employment actions.  Further, even if the Court finds that she has suffered an adverse employment action, she fails to plead facts to support that such actions were motivated by discriminatory intent.  She has therefore failed to state a claim for race, sex, or national origin discrimination under Title VII or Section 1983.

**B.     Alleged Diminution of Plaintiff's Supervisory Status**

Plaintiff's allegations that her supervisory status was diminished are not sufficient to plead an adverse employment claim.  An adverse employment action is a "materially adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities," such as a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique

to a particular situation." *See Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir 2015).

Plaintiff alleges that Defendant Kearley verbally instructed her to "cease all direct communications with other departments in the school district's food services operation," *see* Am. Compl. ¶ 23, "cease issuing any and all instructions to School Food Service Managers under Plaintiff's charge," *see id.* ¶ 24, and to focus solely upon school visits. *See id.* ¶ 25. She also alleges that during a managers meeting Defendant Kearley cut her off and stated that Plaintiff did not know what she was talking about. *See id.* ¶ 26. Finally, she alleges that she was given less respect and recognition in comparison to Assistant Supervisor SFSM Michael Barr, and that, unlike her, Barr was permitted to make managerial decisions on his own. *See id.* ¶¶ 62—63.

At the outset, to the extent that Plaintiff alleges Defendant Kearley was rude or disrespectful to her, this is not sufficient to allege an adverse employment action. *See Leehim*, 2017 U.S. Dist. LEXIS 192747, at *10—11 ("criticism of an employee (which is part of training and necessary to allow employees to develop, improve, and avoid discipline) is not an adverse employment action.") (quoting *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001)). Plaintiff's other alleged job changes are similarly insufficient to plead that she experienced a material adverse change in the terms and conditions of her employment. While Plaintiff may have been disappointed in the way Defendant Kearley allegedly reorganized her responsibilities, she must ultimately allege something "more disruptive than a mere inconvenience or an alteration of job responsibilities" to plead an adverse employment action. *See Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 304 (2d Cir. 2017) (quoting *Galabya*, 202 F.3d at 640).

11

Further, even if such acts could constitute adverse employment actions, Plaintiff fails to plead a causal nexus between Defendant Kearley's actions and her national origin, race, or sex.  Plaintiff puts forth two main allegations to support her discrimination claims: that Defendant Kearley would mock her accent and that of other employees (presumably giving rise to her national origin discrimination claim), and that she was treated differently than Assistant Supervisor SFSM Michael Barr, who she alleges is a non-Hispanic, African-American, American-born male (giving rise to her race, sex, and national origin claims).  *See* Am. Compl. ¶ 28.

First, Plaintiff's only timely allegations regarding Defendant Kearley mocking an employee's accent are in October 2019,[4] when she allegedly mocked the accent of a School Food Supervisor in Plaintiff's presence, and in February 2020, when she allegedly "mocked and mimicked" the accent of another SFSM.  *See* Am. Compl. ¶¶ 52, 54.  However, Plaintiff does not allege that Defendant Kearley exhibited discriminatory animus toward her personally by making fun of Plaintiff's accent during this time.  Nor does she plead facts to connect these incidents to changes in Plaintiff's supervisory roles, which she alleges happened immediately upon Defendant Kearley's arrival.  *See id.* ¶ 2.

Plaintiff also fails to plead sufficient facts to support her allegation that Assistant SFSM was a similarly situated comparator.  A plausible allegation that Defendants treated Plaintiff less favorably than a similarly situated employee outside her protected class can raise an inference of discrimination. *See Butts v. N.Y. City of Dep't of Educ.*, No. 16-CV-5504 (NGG)(RML), 2018 U.S. Dist. LEXIS 170195, at *28 (S.D.N.Y. Sept. 28, 2018). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation

---

[4] Plaintiff does not allege the exact date of this incident and thus Defendants assume, for the purposes this motion only, that it occurred after October 18, 2019, and is thus within the relevant statute of limitations.

and discipline standards and (2) engaged in comparable conduct." *Id.* (citing *Ruiz*, 609 F.3d at 493—94). But Plaintiff pleads only generally that Barr is a "similarly situated Assistant Supervisor." *See* Am. Compl. ¶ 28. She does not allege that she and Barr were subject to the same evaluations or disciplinary standards, or had the same service history. *Daniels v. City of New York*, No. 17 Civ. 9960 (LGS), 2019 U.S. Dist. LEXIS 8604, at *12 (S.D.N.Y. Jan. 17, 2019) ("The Complaint . . . lacks any specificity as to the alleged comparators' qualifications, responsibilities, employment history and conduct that give rise to their reprimands.").

Critically, Plaintiff does not (and cannot) plead that Barr was under the supervision of Defendant Kearley.[5] Thus, it is irrelevant if, as Plaintiff pleads, he was given different supervisory discretion, responsibilities, or duties, because Plaintiff cannot allege that she and Barr were treated differently because of Defendant Kearley's alleged discriminatory animus. *See* Am. Compl. ¶¶ 28—30, 62—63; Further, even accepting as true that Barr was "allowed to make managerial decisions on his own" or communicate directly with other SFSMs, principals, and food service departments, *see id.*, it does not automatically follow that the levels of discretion and responsibility afforded to Barr and Plaintiff were different *because of* Plaintiff's race, sex, or nationality.

## C.    Plaintiff's Alleged May 2020 "Demotion"

Plaintiff also alleges that she was directed to report to Defendant Condon's field office on May 18, 2020, where she was "formally stripp[ed]" of her Assistant Supervisor title and functions and "demoted" to a Level I Manager position with "substantially less responsibilities and substantially less supervisory functions." *See* Am. Compl. ¶¶ 75—76.

---

[5] Upon information and belief, Barr was Assistant Supervisor to the District's other Associate SFSM and was not managed by Defendant Kearley.

However, as with her alleged diminution of status, Plaintiff does not adequately plead that her "demotion" was an adverse employment action. "[A] forced transfer, or denial of a transfer, is not an adverse employment action if the terms, privileges, duration, or condition of a plaintiff's employment do not change." *Smith v. N.Y. City Dept. of Educ.*, 2019 U.S. Dist. LEXIS 204645, at *18 (S.D.N.Y. Nov. 22, 2019); *Sletten v. LiquidHub, Inc.*, 13 Civ. 1146 (NRB), 2014 U.S. Dist. LEXIS 94697, at *28 (S.D.N.Y. July 10, 2014). Plaintiff does not (and cannot) plead that she experienced any loss of pay, less desirable schedule, or a demotion from her actual civil service title of School Food Service Manager. Further, she does not plead any specific facts regarding the difference in duties and responsibilities between an "Assistant Supervisor" and a "Level I Manager," and instead broadly alleges that her "Level I Manager" position had "substantially less responsibilities and substantially less supervisory functions." *See* Am. Compl. ¶ 76. Such allegations lack the specificity and particularity to plead that Plaintiff's transfer to another district constitutes an adverse employment action. *See Ashcroft*, 556 U.S. at 678.

Plaintiff also fails to plead facts sufficient to support her allegation that her alleged "demotion" was motivated by her national origin, race, or sex. Importantly, Plaintiff does not allege that Defendant Kearley requested or otherwise recommended her transfer to Defendant Condon. Neither does she allege that Defendant Kearley had the authority to transfer Plaintiff to another district. Furthermore, to the extent that she imputes discriminatory intent to Defendant Condon, she alleges no facts to support that Defendant Condon initiated her transfer because of her race, sex, or national origin. As such, Plaintiff fails to state a claim for discrimination based on her alleged "demotion" in May 2020.

**D.      Alleged March 2021 Failure to "Promote" Plaintiff**

For the purposes of this motion to dismiss only, Defendants do not dispute that Plaintiff's claim that she was not hired for the vacant District 6 position is sufficient to plead an adverse employment action.[6]  *See Allen v. N.Y. City Dept. of Envtl. Protection*, 51 F. Supp. 3d 504, 512—513 (S.D.N.Y. 2014).  Nevertheless, Plaintiff still fails to allege any facts to support her allegation that she was not given the position because of her race, sex, or national origin.

As with her alleged "demotion," Plaintiff does not allege that Defendant Kearley had any involvement in the decision-making process to fill the District 6 vacancy.  Although she alleges that Defendant Condon was on her interview panel, *see* Am. Compl. ¶ 90, she does not allege that she was the final decisionmaker or that she denied Plaintiff the position based on her race, sex, or national origin.  As such, Plaintiff has failed to plead any discriminatory animus in Defendants' decision not to hire her for the District 6 vacancy.

**E.      Plaintiff's Disability Discrimination Claims Under the ADA**

Plaintiff alleges that Defendants treated her in a "disparate manner" on account of her Covid-19 diagnosis and her corresponding leave of absence, which she alleges was taken as a reasonable accommodation to her disability.  *See* Am. Compl. ¶ 104.  As a preliminary matter, while discrimination claims under the ADA are analyzed under the same framework as Title VII, the requirement that a Plaintiff plead membership in a protected class is generally understood to mean that she must plead she is disabled within the meaning of the ADA.  *See, e.g., Langella v. Mahopac Cent. Sch. Dist.*, No. 18-cv-10023 (NSR), 2020 U.S. Dist. LEXIS 95588, at *24—25 (S.D.N.Y. May 31, 2020) (stating the elements for pleading an ADA claim).

---

[6] Defendant notes, however, that inasmuch as Plaintiff was applying for another School Food Service Manager position with no increase in pay or benefits she was not, per se, applying for a "promotion."

Although Plaintiff alleges that Covid-19 is a "disability and serious medical condition that affects one or more major life functions, including breathing," *see* Am. Compl. ¶ 68, Plaintiff's allegation that she contracted Covid-19 in March 2020 is not sufficient to plead that she is disabled under the ADA because she does not allege that any limitation on her breathing was more than temporary. *See Earl v. Good Samaritan Hosp. of Suffern*, No. 20 CV 3119 (NSR), 2021 U.S. Dist. LEXIS 186182, at *14 (S.D.N.Y. Sep. 28, 2021) (loss of smell and taste due to Covid-19 diagnosis not sufficient to plead disability under ADA); *Dudley v. N.Y.C. Housing Auth.*, No. 12 Civ. 2771(PGG), 2014 U.S. Dist. LEXIS 140052, at *34 (S.D.N.Y. Sept. 30, 2014) ("temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act.").

However, even assuming, *arguendo*, that Plaintiff is disabled under the meaning of the ADA, she still fails to state a claim for disability discrimination.  Plaintiff's allegation that she was denied the ability to work from home in May 2020, *see* Am. Compl. ¶ 77, is not sufficient to allege a "materially adverse change in the terms and conditions of employment"— indeed, Plaintiff appears to be alleging that the conditions of her employment are *unchanged* compared to before she left on FMLA leave.  And, as with her other discrimination complaints, Plaintiff also fails to allege any facts supporting her theory that this denial was based on her alleged disability or disability leave.  As such, she fails to state a claim for disability discrimination under the ADA.

## F.    Alleged Hostile Work Environment Claims

Finally, Plaintiff alleges that she was subjected to a hostile work environment on account of her national origin, race, sex and disability.  To establish a hostile work environment claim under either Title VII, § 1983 or the ADA, "[t]he plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms

and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (Title VII analysis apples to ADA hostile work environment claims).   Courts must look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider the following exclusive list of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's "work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).   Additionally, mere "workplace bullying" is not enough to give rise to an actionable hostile work environment claim.   Rather, there must be a showing that the conduct occurred *because of* the employee's membership in a protected class. *See Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999); *Alfano*, 294 F.3d at 374.

As explained *supra* in Point III, the majority of Plaintiff's allegations purportedly supporting a hostile work environment are time-barred.   However, even assuming that all of Plaintiff's allegations are timely, she still fails to plead facts sufficiently severe or pervasive to give rise to a hostile work environment claim.   First, Plaintiff alleges, in a broad and conclusory manner, that Defendant Kearley "repeated Plaintiff's sentences in faux accents" in order to mimic Plaintiff's accent sometime before June 2018, *see* Am. Compl. ¶¶ 28, 31, and that she would also mock the accents of "other non-American born employees" *See id.* ¶ 31.   Unlike her allegations with respect to other employees, Plaintiff alleges no specific facts regarding the times in which Defendant Kearley's allegedly mocked her own  accent.   She has therefore failed to plead with sufficient particularity that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" such that "the terms and conditions of her employment were

17

thereby altered." *See Alfano*, 294 F.3d at 373.  Further, "absent a single incident of harassment that is extraordinarily severe, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Spencer v. Global Innovative Group*, No. 17-CV-7604 (PGG) (BCM), 2021 U.S. Dist. LEXIS 32738, at *12 (S.D.N.Y. Feb. 19, 2021).  Plaintiff pleads no such facts.

Plaintiff also alleges that Defendant Kearley once cut her off at a meeting and stated, "she [Plaintiff] does not know what she is talking about," and thereafter "disrespectfully yelled" at her in or around June 2019.  *See* Am. Compl. ¶¶ 26, 41.  However, hostile work environment claims "are not intended to promote or enforce civility, gentility or even decency." *See Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citing *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011)).  Plaintiff's allegations that Defendant Kearley was generally disrespectful to her are not sufficient to meet the severe and pervasive standard required for federal hostile work environment claims.  *See id.*  Further, Defendant Kearley's alleged comment was completely neutral with respect to race, national origin, disability, and sex, and Plaintiff does not allege Defendant Kearley made this comment because of her protected characteristics.  *See, e.g., Opoku v. Brega*, No. 15-CV-2213 (KMK), 2016 U.S. Dist. LEXIS 136038 (S.D.N.Y. Sept. 30, 2016) (facially neutral comments are insufficient to support a discrimination claim under Title VII).

Plaintiff also alleges that on March 16, 2020, a Microsoft Teams conversation between Defendant Kearley and District 3 Supervisor Nelson Quiles "exhibited [Defendant Kearley's] animus toward Plaintiff, and discussed creating a hostile work environment for Plaintiff."  *See* Am. Compl. ¶ 65.  Plaintiff does not explain how she obtained a presumably private Microsoft Teams chat transcript between Defendant Kearley and Quiles.  Nevertheless,

upon review of the content of the conversation, which Plaintiff includes in her Complaint, *see* Am. Compl. ¶ 65, it is unclear why or how this conversation is indicative of discriminatory animus.  The conversation is completely devoid of context, but an objective reading reflects Defendant Kearley's frustration with Plaintiff's inability to complete her work, as demonstrated by Quiles's alleged comment, "Why don't you take it over to prove a point. Like it took you sooo many months but it took me a day to settle kind of thing."  *See id.*  The most plausible reading of this conversation is that Defendant Kearley was seeking support from a fellow supervisor because Plaintiff was unable to timely complete some unspecified project that, presumably, should have been completed in short order.  This reading is supported by Defendant Kearley's exasperated response, "What else can I have her do?"  *See id.*

Arguably, the only negative comment in the conversation is Defendant Kearley's alleged statement, "…lmao. Karma is amazing. The sub that she just spent 5 hours preparing a writeup for resigned lol."  But even accepting as true that Defendant Kearley made this comment, it is not sufficiently severe to state a claim for hostile work environment.  Again, taken in the context of her clear frustration with Plaintiff's inability to complete her work, a more plausible reading of the comment is that Defendant Kearley was expressing a feeling of vindication.  Defendant Kearley's alleged comments indicate her clear frustration with Plaintiff's work performance — not any discriminatory animus on the basis of her race, national origin, sex, or disability.  .

Finally, Plaintiff cannot state a claim for hostile work environment claim under the ADA notwithstanding her allegation that Defendant Condon notified her new supervisor of her Covid-19 status by stating she had "built up immunity to the virus."  *See* Am. Compl. 78—

79.  Plaintiff does not plead any facts to support an allegation that this single comment altered the terms and conditions of her work.  *See, e.g., Spencer*, 2021 U.S. Dist. LEXIS 32738, at *12.

Even when viewed together, Plaintiff's allegations are not sufficient to plead that she plausibly experienced a material adverse change in the terms and conditions of employment as a result of Defendants' alleged conduct giving rise to a hostile work environment claim.  *See Reyes v. Westchester County Health Care Corp.*, No. 19-CV-08916 (PMH), 2021 U.S. Dist. LEXIS 18659, at *27 (S.D.N.Y. Jan. 29, 2021) (additional work assignments and supervisor's comments regarding speaking Spanish and plaintiff's accent not sufficient to plead hostile work environment claim).  As such, her hostile work environment claims must be dismissed.

## POINT VI

## PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION UNDER TITLE VII, SECTION 1983, THE ADA, AND THE FMLA

To state a prima facie retaliation claim under Title VII, Section 1983, and the ADA, a plaintiff must show that she: (1) engaged in a protected activity of which defendants were aware, (2) was subjected to an adverse employment action, and (3) a causal connection existed between the adverse employment action and his protected activity.  *Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 89 (2d Cir. 2010); *see also Morey v. Windsong Radiology Group, P.C.*, 794 F. App'x 30, 33 (2d Cir. 2019) (ADA); *Day v. City of N.Y.*, 15 Civ. 4399 (GBD)(HBP), 2015 U.S. Dist. LEXIS 161206, at *16 (S.D.N.Y. Nov. 30, 2015) (Section 1983).  Plaintiff alleges that in retaliation for her discrimination complaints, both internal and to administrative agencies, she was subjected to a hostile work environment by Defendant Kearley, *see* Am. Compl. ¶¶ 35—41, summarily "demoted" by Defendant Condon in or around May 18, 2020, *see id.* ¶ 76, and that Defendants failed to "promote" her to a vacant Assistant Supervisor position in or around March 2021.  *See id.* ¶¶ 89—96.

Plaintiff alleges that she complained to Defendant Condon about Defendant Kearley's discriminatory treatment at least four times: in June 2018, *see* Am. Compl. ¶ 28; in or around June 2019, *see id.* ¶ 42; in September 2019, *see id.* ¶ 59; and on or around March 17, 2020. *See id.* ¶ 66. Plaintiff also alleges that she filed administrative complaints with the EEOC and SDHR in or about August 2020 complaining of disability, national origin, and race discrimination, as well as retaliation. *See id.* ¶ 80. Finally, she alleges that she took FMLA leave between March 2020 and May 2020, *see id.* ¶¶ 68—69, 74—75, and again between November 2020 and February 2020. *See id.* ¶¶ 83—86.

## A.   Plaintiff Fails to State a Claim for Retaliation Under Title VII, Section 1983, and the ADA

With respect to the alleged retaliation by Defendant Kearley, Plaintiff alleges that Kearley was first put on notice of her complaints in or around June 2019, when Plaintiff alleges that she reported her prior complaints directly to her. *See id.* ¶ 44. Plaintiff alleges that in retaliation, Defendant Kearley assigned her to visit two to three schools each day, four times a week, whereas prior to her complaint she was only assigned to visit two schools per day. *See id.* ¶¶ 46, 49. First, these allegations are not timely because they occurred before October 18, 2019. *See supra* Pt. III. The only timely allegations which occur after Plaintiff alleges that Defendant Kearley was on notice of her complaints are that Defendant Kearley mocked the accent of other employees sometime in October 2019 and February 2020, *see id.* ¶¶ 52, 54, and that Plaintiff continued to be assigned a large number of school visits. *See id.* ¶ 57.

Plaintiff's complaints that her workload increased are not sufficient to plead that she experienced an adverse employment action in a retaliation claim. *See Ziyan Shi v. N.Y. Dept. of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019) ("The assignment of

a challenging workload is 'not sufficiently adverse to support either a discrimination or a retaliation claim.'") (quoting *Osby v. City of New York*, 748 Fed. App'x 375, 378 (2d Cir. 2018)).

Further, Plaintiff fails to sufficient facts to establish that her discrimination complaints were the but-for cause of Defendant Kearley's actions.  In the absence of any facts alleged that might support Plaintiff's claims that this action was motivated by retaliatory animus, Defendants assume that Plaintiff relies on the temporal proximity between her discrimination complaints and her subsequent transfer to another district.  Plaintiff alleges that she was "demoted" on or around May 18, 2020.  *See id.* ¶ 76.  At that time, her most recent discrimination complaint to Defendant Condon was on or around March 17, 2020.  *See id.* ¶ 66. However, courts within the Second Circuit have consistently held that alleged adverse employment actions occurring more than two months after a plaintiff's protected activity is too attenuated to raise an inference of retaliatory intent.  *See, e.g., Mazurkiewicz v. NY City Health & Hosps. Corp.*, No. 09 Civ. 5962 (WHP), 2010 U.S. Dist. LEXIS 107697, at *13 (S.D.N.Y. Sep. 16, 2010); *Fields v. N.Y. City Health & Hosp. Corp.*, No. 17-CV-6042 (PKC) (CLP), 2018 U.S. Dist. LEXIS 121821, at *11—12 (E.D.N.Y. July 20, 2018)).

Plaintiff also alleges that Defendants did not hire her for a vacant Assistant Supervisor SFSM position in retaliation for her discrimination complaints to Defendant Condon and her pending EEOC and SDHR complaints.  *See* Am. Compl. ¶¶ 89—96.  In support thereof, Plaintiff speculates that she was asked more questions during the interview process, *see id.* ¶ 93, and that she was more qualified than the candidate ultimately selected.  *See id.* ¶ 95.  She further speculates that the selected candidate's "only qualification" was four years as a School Food Services Manager.  *See id.* ¶ 95.  She does not, however, allege that either Defendant Kearley or Defendant Condon were the final decisionmakers in this hiring process, or that the actual

decisionmaker had knowledge of any of her prior discrimination complaints. Furthermore, even if Plaintiff had some non-speculative basis for believing that she was asked more questions than the other candidates, it is unclear why this is indicative of retaliatory intent: indeed, receiving more questions in an interview would just as plausibly suggest that Plaintiff was being seriously considered as a candidate, even if she was not ultimately selected.

Moreover, to the extent Plaintiff once again relies on the temporal proximity between her protected activities and the alleged fail to hire her for the vacant Assistant Supervisor SFSM position, here the temporal connection is even more strained. Plaintiff alleges that her interview was in March 2021—seven months after her most recent discrimination complaint in August 2020. *See* Am. .Compl. ¶¶ 80, 89.

**B.      Plaintiff Fails to State a Claim for Retaliation Under the FMLA**

To make out a prima facie case of FMLA retaliation, a plaintiff must plead that "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the employment action occurred under circumstances giving rise to an inference of discriminatory intent." *See Bernheim v. N.Y. City Dept. of Educ.*, No. 19-CV-9723 (VEC) (JLC), 2021 U.S. Dist. LEXIS 118948, at *11 (S.D.N.Y. June 25, 2021) (internal citation omitted). The pleadings give no indication as to why Plaintiff believes her transfer to another district in May 2020 was in retaliation for taking FMLA leave to treat her Covid-19 diagnosis. Likewise, it is unclear why Plaintiff believes the DOE's decision not to hire her for the vacant Assistant Supervisor SFSM position in March 2021 is plausibly connected to her FMLA leave between November 2020 and February 2021. To the latter point, Plaintiff does not plead that either her interview panel or the ultimate decisionmaker was aware of her FMLA leave. Further, the FMLA guarantees that an employee will be restored to an "equivalent" job—not the *actual* job held prior to going on FMLA leave. *See*

23

29 U.S.C. § 2614(a)(1).  And, as explained *supra* in Point V(C), Plaintiff has not pleaded facts with sufficient particularity to support her allegation that her transfer to a different SFSM position in another district was a "demotion," such as a loss of pay, benefits, or status.

Finally, Plaintiff alleges that upon her return from her second FMLA leave in February 2021 she was given assigned an "unusually large number" of schools to manage.  *See* Am. Compl. ¶ 86.  Again, this allegation is insufficient to plead a retaliatory adverse employment action.  *See Ziyan Shi*, 393 F. Supp. 3d at 338, and Plaintiff does not allege any facts to support a claim that her workload was motivated by discriminatory intent, such as whether her supervisor at that time had knowledge that she exercised her rights under the FMLA.

### POINT VII

### PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY UNDER SECTION 1983

To plead a *Monell* claim, a plaintiff must allege (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.  *See Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007).  As a threshold matter, a municipality cannot be held liable under § 1983 where no constitutional violation or violation of federal law has occurred.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Wright v. City of Syracuse*, 611 F. App'x 8, 12 (2d Cir. 2015) (no *Monell* liability where plaintiff failed to establish liability for discrimination, retaliation, and hostile work environment claims).  Because the Complaint fails to state a plausible claim that Defendants discriminated or retaliated against her, as explained *supra* in Points I—V, it also fails to state a *Monell* claim.  *See id.*  Moreover, it is well established that a single incident of unconstitutional activity, particularly if it involved only actors below the policy-making level, does not rise to the level of a *Monell* violation.  *See City of Okla. v. Tuttle*, 471 U.S. 808, 814 (1985).  Further, Plaintiff does not allege which official

DOE or City of New York policy or custom allegedly violated her federal rights. Thus, Plaintiff's *Monell* claims warrant dismissal.

## POINT VIII

### PLAINTIFF'S SECTION 1981 CLAIMS SHOULD BE DISMISSED

"When the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981." *Bermudez*, 783 F. Supp. 2d at 576; *see also Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 707 (S.D.N.Y. 2003). Thus, to the extent Plaintiff brings claims under § 1981 those claims must be dismissed. *See id.*; *Gonzalez v. City of N.Y.*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and dismiss the Amended Complaint in its entirety together with such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          November 18, 2021

> GEORGIA M. PESTANA
> Corporation Counsel of the
>   City of New York
> Attorney for Defendants
> 100 Church Street, Room 2-184
> New York, New York 10007-2601
> (212) 356-2441
> awanslow@law.nyc.gov
>
> By:    */s/ Angela M. Wanslow*
>        Angela M. Wanslow
>        Assistant Corporation Counsel

25