UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/26/2022___
```

JOSEFINA RODRIGUEZ,

                Plaintiff,

     -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; LAUREN KEARLY,
individually; and CATHIE CONDON,
individually

               Defendants.

1:21-cv-3561 (MKV)

**MEMORANDUM OPINION
AND ORDER GRANTING
IN PART AND DENYING IN
PART MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Josefina Rodriguez, a School Food Service Manager ("SFSM") for Defendant

New York City Department of Education ("DOE"), asserts claims under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act

of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); 42 U.S.C. § 1981 ("Section 1981"); 42 U.S.C.

§ 1983 ("Section 1983"); and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et*

*seq.* ("FMLA").  She brings suit against the DOE, in addition to two individual defendants, Cathie

Condon and Lauren Kearley.  Defendants DOE and Kearley ("Moving Defendants") have

appeared and move to dismiss Plaintiff's claims against all Defendants pursuant to Federal Rule

of Civil Procedure 12(b)(5) and 12(b)(6).  For the reasons set forth below, the motion to dismiss

is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiff, a native of the Dominican Republic, began working for the DOE in 2001 as an SFSM. Amended Compl. ¶¶ 13, 14 [ECF No. 3] ("Am. Compl."). From May 2017 through May 2020, Plaintiff also served as an Assistant Supervisor, while still working as an SFSM. *Id.* ¶ 16.

In her rambling 126-paragraph Complaint, Plaintiff complains of many problems she had at work. The issues began in March 2018, when Kearley began supervising Plaintiff. *Id.* ¶ 19. Kearley "almost immediately" directed Plaintiff to stop communicating with other departments and to cease issuing instructions to the SFSMs that Plaintiff supervised. *Id.* ¶¶ 22–24. Kearley instructed Plaintiff instead to focus her attention on school site visits. *Id.* ¶ 25. Plaintiff also recalls that, in a meeting at an unspecified time, Kearley interrupted Plaintiff and said Plaintiff did "not know what she [was] talking about." *Id.* ¶ 26.

In June 2018, Plaintiff approached Condon, the DOE's Manhattan Regional Director, to discuss her issues with Kearley. *Id.* ¶ 28. Specifically, Plaintiff complained that Michael Barr, a non-Hispanic, American-born, male Assistant Supervisor, was permitted to communicate with other departments and to issue instructions to SFSMs, while she was not. *Id.* ¶¶ 29–30. Plaintiff expressed concern that she was being treated differently because of her Hispanic accent, her national origin, or her sex. *Id.* ¶¶ 31–32. Plaintiff mentioned that Kearley "constantly repeated" Plaintiff's sentences in a faux accent and mimicked the accents of other non-American born employees. *Id.* ¶ 31. Condon assured Plaintiff she would "take care" of the situation. *Id.* ¶ 33.

Despite that assurance, Plaintiff's difficulties with Kearley persisted. In June 2019, Plaintiff and Kearley interviewed an Indian immigrant with a "strong" accent. *Id.* ¶ 37. Kearley asked the candidate more questions than she did other, American-born interviewees. *Id.* ¶ 38.

---

[1] The facts are taken from the Complaint, and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Afterwards, Kearley and another interviewer, Nelson Quiles, mocked and laughed at the candidate's accent. *Id.* ¶ 39. At some point later, Kearley also "disrespectfully yelled" at Plaintiff. *Id.* ¶ 41.

In response, Plaintiff approached Condon again. *Id.* ¶ 42. Condon "sighed in response" and told Plaintiff that the DOE's Director of Operations would not "like hearing about [Plaintiff's] latest complaint." *Id.* ¶ 43. Plaintiff then apparently decided to take matters into her own hands and told Kearley directly that she had complained to Condon about her behavior. *Id.* ¶ 44.

After that, Kearley tasked Plaintiff with visiting two to three different schools per day, four times per week, which Plaintiff describes as "an unusually large amount." *Id.* ¶¶ 46, 60. At the same time, the Complaint also alleges that Plaintiff was previously responsible for visiting two schools per day. *Id.* ¶ 49. In September 2019, Plaintiff approached Condon to complain that Kearley was retaliating against her. *Id.* ¶¶ 59, 60. In response, Condon simply gave Plaintiff advice on how to get the additional work done. *Id.* ¶ 61.

In the following months, Plaintiff witnessed Kearley mock the accent of non-American born DOE employees two more times. In October 2019, Kearley mocked the accent of one employee in front of Plaintiff. *Id.* ¶ 51. A similar incident occurred in February 2020. *Id.* ¶ 54.

Plaintiff generally contends she did not receive "the same respect and recognition in the district" as Barr. *Id.* ¶ 62. While his "input and ideas were sought out," Plaintiff claims hers were not. *Id.* ¶ 63. She also accuses Kearley of "frequently harass[ing] her." *Id.* ¶ 64.

On March 16, 2020, Plaintiff alleges that Kearley and Quiles discussed Plaintiff via Microsoft Teams. *Id.* ¶ 65. In that conversation, Quiles told Kearley to "give [Plaintiff] shit to do." *Id.* ¶ 65. Kearley asked for "ideas," to which Quiles suggested that Kearley "take it over to prove a point." *Id.* ¶ 65. Later, Kearley wrote "Karma is amazing. The sub that she just spent 5 hours preparing a writeup for resigned lol." *Id.* ¶ 65.

Plaintiff complained to Condon about Kearley again the next day. *Id.* ¶ 66. Condon responded by handing Plaintiff a piece of paper that listed job openings in other DOE departments. *Id.* ¶ 67. The following week, Plaintiff was diagnosed with COVID-19. *Id.* ¶ 68. She requested, and was granted, an eight-week medical leave of absence. *Id.* ¶ 69. Plaintiff kept Condon up to date during her leave. *Id.* ¶¶ 71–73.

On May 17, 2020, Plaintiff informed Kearley that she was ready to return to work. *Id.* ¶ 74. Kearley did not respond. *Id.* ¶ 75. Condon emailed Plaintiff and instructed her to report to Condon's office the following day. *Id.* ¶ 75. Plaintiff complied, and when she arrived to Condon's office, Condon "formally strip[ped]" her of the Assistant Supervisor title and demoted her to Level I Manager. *Id.* ¶ 76. Condon also instructed Plaintiff to report to work in person, even though other employees were working from home, because she had already "built up immunity to the virus." *Id.* ¶¶ 77–78. After this demotion, Plaintiff was given a new supervisor. *Id.* ¶ 78.

In August 2020, Plaintiff filed discrimination and retaliation charges with the New York State Division of Human Rights ("DHR") and the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 80. Condon was aware of these complaints. *Id.* ¶ 91. Three months later, in November 2020, Plaintiff took another extended leave of absence, which lasted until February 2021. *Id.* ¶¶ 83, 86.

While Plaintiff was still on leave in January 2021, she applied for a vacant Assistant Supervisor position in another school district. *Id.* ¶ 85. Plaintiff was interviewed in March. *Id.* ¶ 89. Condon, who was on that interviewing panel, expressed surprise that Plaintiff "had the nerve to apply," and remarked that Plaintiff would not be hired. *Id.* ¶ 92. Ultimately, Plaintiff was not offered the position. *Id.* ¶ 95. Plaintiff contends she was more experienced than the candidate who was hired, who had only four years of experience. *Id.* ¶ 96. In April 2021, Plaintiff requested a medical leave of absence after being diagnosed with post-traumatic stress disorder ("PTSD"),

which she alleges resulted from her "hostile work environment" and Defendants' "failure to promote" her.  *Id.* ¶ 97.  She does not allege whether the leave was granted.  *See id.*  Plaintiff is still employed with the DOE.  *Id.* ¶ 1.

Plaintiff initially filed this action on April 21, 2021, within 90 days of receiving a right to sue letter from the EEOC.  *See* Complaint [ECF No. 1]; Am. Compl. ¶ 11.  She filed an Amended Complaint five days later.  *See* Am. Compl.  The Amended Complaint asserts twelve separate claims for: (1) disability discrimination and hostile workplace against the DOE under the ADA; (2) national origin discrimination and hostile workplace against the DOE under Title VII; (3) race discrimination and hostile workplace against the DOE under Title VII; (4) race discrimination and hostile workplace against all Defendants under Section 1983; (5) race and prior alienage discrimination and hostile workplace against all Defendants under Section 1981; (6) retaliation and hostile workplace against all Defendants under Section 1981; (7) retaliation and hostile workplace against the DOE under Title VII; (8) retaliation and hostile workplace against the DOE under the ADA; (9) retaliation and hostile workplace against all Defendants under Section 1983; (10) retaliation and hostile workplace against all Defendants under Section 1981; (11) retaliation against all Defendants under the FMLA; and (12) sex discrimination against all Defendants under Section 1983.[2]  Am. Compl. ¶¶ 103–26.

Moving Defendants appeared and moved to dismiss the Complaint under Rule 12(b)(5) with regard to Defendant Condon and under 12(b)(6).  *See* Mot. Dismiss [ECF No. 16]; Memorandum of Law [ECF No. 19] ("Def. Mem.").  Plaintiff opposed the motion,[3] *see* Pl. Mem.,

---

[2] Plaintiff has voluntarily dismissed the sex discrimination claim.  First Memorandum of Law in Opposition 5, 14 [ECF No. 28] ("Pl. Mem.").

[3] In her Opposition, Plaintiff references facts that were not pled in the Amended Complaint.  For example, she contends that Kearley "made an abhorrent racial remark to" Barr and "caused other dark-skinned foreigners . . . to quit."  Pl. Mem. 9.  But "allegations raised for the first time in an opposition brief cannot defeat a motion to dismiss, and such allegations do not automatically amend the complaint."  *Lee v. Saul*, No. 19CIV6553PGGSN, 2022 WL

and Moving Defendants submitted a Reply Memorandum of Law.  *See* Reply Memorandum of

Law [ECF No. 31] ("Def. Reply").[4]

## ANALYSIS

Plaintiff asserts twelve scattershot causes of action.  She alleges discrimination and hostile

workplace claims on account of her race, national origin, and disability, in violation of Title VII,

the ADA, Section 1981, and Section 1983.[5]  Additionally, she alleges retaliation claims under Title

VII, the ADA, Section 1981, Section 1983, and the FMLA.[6]  Plaintiff seeks damages for

"humiliation, mental pain[,] and suffering," "past and future loss of compensation," "punitive

and/or liquidated damages," and other costs.  Am. Compl. ¶ VI.  The DOE and Kearley move to

dismiss Plaintiff's claims against Condon pursuant to Rule 12(b)(5) and all claims against them

pursuant to Rule 12(b)(6).

### I.    Rule 12(b)(5) Motion to Dismiss

Moving Defendants move to dismiss the claims against Condon, arguing she was not

properly served.  Defense counsel "has not appeared or made any representation decision with

respect to . . . Condon."  Def. Mem. 5 n.3.  Instead, the Moving Defendants "make[] this argument

on her behalf." [7]  *Id.*

---

873511, at *4 (S.D.N.Y. Mar. 23, 2022); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

[4] As discussed in further detail below, because they allege Condon was not properly served, Defense counsel "has not appeared or made any representation decision with respect to . . . Condon."  Def. Mem. 5 n.3.

[5] The Complaint pleads the hostile workplace claims as constituent parts of Plaintiff's discrimination and retaliation claims.  A hostile workplace claim can be a separate cause of action, however, so the Court addresses these claims independently, as do the parties in their briefs.

[6] As outlined above, Plaintiff brings *only* Section 1981, Section 1983, and FMLA claims against the individual Defendants.  Am. Compl. ¶¶ 109–14, 119–24.

[7] In federal court, "[t]he need to file a special appearance in order to object to jurisdiction or venue has vanished," and a "party can file a general appearance and object to personal jurisdiction . . . at any time before the answer is filed or in the answer."  *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972).

In response, Plaintiff filed an affidavit of service indicating that Condon was served through the mail and by hand delivery to an individual named "Farrah" at her office. Affidavit of Service [ECF No. 9] ("Service Aff."). But Condon has provided a sworn declaration stating she never received the Summons or Amended Complaint. Declaration of Cathie Condon 1–2 [ECF No. 18] ("Condon Dec."). Condon explains that no "Farrah" works in her office. Condon Dec. 2. While the affidavit of service states that the hand delivery occurred at 4:30 pm on June 9, 2021, Condon contends this would have been "after school hours" and her "office manager . . . leaves for the day at 3:00 pm." *Id.* In response, Plaintiff simply asserts that Condon "was properly served." Pl. Mem. 13.[8]

When a defendant files a Rule 12(b)(5) motion, "the plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). While a "process server's affidavit of service constitutes prima facie evidence of proper service," *Rana*, 305 F.R.D. at 63, a "defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service" and often "necessitates an evidentiary hearing," *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). However, no hearing is required "where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." *Id.* at 58 (cleaned up). Similarly, "conclusory statements on the part of the plaintiff are insufficient to overcome a defendant's sworn affidavit that he was not served." *Li v. Ichiro Sushi, Inc.*, No. 14-CV-10242(AJN), 2016 WL 1271068, at *2 (S.D.N.Y. Mar. 29, 2016) (cleaned up).

Condon has sworn to "specific facts . . . rebut[ting] the statements in the process server's affidavit[]." *Old Republic*, 301 F.3d at 58 (cleaned up). Specifically, she states there is no individual named "Farrah" at her office, her office manager would not have been at the office at

---

[8] To resolve a Rule 12(b)(5) motion, "a court must look to matters outside the complaint." *Rana v. Islam*, 305 F.R.D. 53, 62 (S.D.N.Y. 2015) (cleaned up).

4:30 pm (the alleged time of purported service), and that she never received the Summons or Complaint.  Plaintiff provides only "conclusory statements" in response.  *Li*, 2016 WL 1271068, at *2.  On the present record and at this stage, Plaintiff has not met her burden to prove adequate service.  *Id.*

The Court nonetheless "has discretion" in determining whether "to dismiss the action." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002); *see also Philippe Nyc I LLC v. Philippe W. Coast, LLC*, No. 14 CIV. 9858 (NRB), 2016 WL 1183669, at *4 (S.D.N.Y. Mar. 24, 2016) ("[E]ven if service of process is found to have been insufficient, dismissal is not mandatory but rather within the court's discretion.").  Given that this case is in its initial stage, and Plaintiff has asserted some claims which are facially plausible, the Court exercises its discretion to deny *without prejudice* Defendant's Rule 12(b)(5) motion to dismiss.  Plaintiff is ordered to serve Condon and to file proof of service on the docket within 30 days of the issuance of this Memorandum Opinion and Order.  *See Li*, 2016 WL 1271068, at *4 (exercising discretion and ordering service in 30 days); *Hidalgo v. Ichiro Sushi, Inc.*, No. 15-CV-414(AJN), 2016 WL 1271069, at *3 (S.D.N.Y. Mar. 29, 2016) (same).

## II.     Rule 12(b)(6) Motion to Dismiss

To survive the Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

1.     **Discrimination Claims**

Plaintiff claims she suffered discrimination because of her disability, race, and national origin.  She asserts claims under Title VII and the ADA against the DOE, and under Section 1981 and Section 1983 against all Defendants.  Moving Defendants move to dismiss.

i.     *Plaintiff Fails to State an ADA Discrimination Claim*

To merit protection under the ADA, Plaintiff must first "allege facts to support her prima facie case that [she] . . . is a person with a disability under the meaning of the ADA."  *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019).   The statute defines a "disability" as a "physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).

While the Complaint *generally* alleges that COVID-19 is "a disability and serious medical condition that affects one or more major life functions," Am. Compl. ¶ 68, it fails to allege that COVID-19 in fact affected any of *Plaintiff's* major life activities.  *See Morey*, 794 F. App'x at 33 ("Plaintiff must allege . . . facts as to how *her* disability 'substantially limits' *her* 'major life activities' to plausibly state a claim." (emphases added) (quoting *Iqbal*, 556 U.S. at 678)).  Because Plaintiff failed to describe in any "detail the frequency, duration, or severity of [her] alleged [disability], and how [it] affected [her] at the time of [her] employment," her claim for disability discrimination must fail.  *Earl v. Good Samaritan Hosp. of Suffern NY*, No. 20 CIV. 3119 (NSR), 2022 WL 4087597, at *10 (S.D.N.Y. Sept. 6, 2022) (cleaned up).   Accordingly, the disability discrimination claim against the DOE is dismissed.[9]

---

[9] Plaintiff contends she was diagnosed with PTSD as a result of her "hostile work environment" and Defendants' "failure to promote" her.  Am. Compl. ¶ 97.  She does not, however, allege she was discriminated against on the basis of this diagnosis.

ii.  *Plaintiff Fails to State a Section 1981 Discrimination Claim*

The Complaint asserts a Section 1981 discrimination claim "as [s]ecured by Section 1983" against all Defendants.  Am. Compl. ¶¶ 111–12.  The purported law is clear, however, that "with respect to state actors, Section 1983 is the *exclusive* remedy for violations of rights guaranteed under Section 1981."  *Walker v. Triborough Bridge & Tunnel Auth.*, No. 21-CV-474 (VEC), 2021 WL 5401483, at *3 (S.D.N.Y. Nov. 18, 2021) (emphasis added) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–34 (1989)).  The DOE is, of course, a state actor, as are the individual Defendants.  *See Walker*, 2021 WL 5401483, at *3 ("State employees are . . . state actors for the purposes of discrimination claims.").  Thus, the Section 1981 claim for race and national origin discrimination is dismissed against all Defendants.

iii.  *Plaintiff Fails to State Title VII Discrimination Claims*

a.  Time Bar

Moving Defendants argue that Plaintiff's Title VII claims are time barred to the extent they are based on actions occurring before October 18, 2019.  *See* Def. Mem. 8; Def. Reply 3–5.

Administrative exhaustion is a "precondition to bringing a Title VII claim" in federal court. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("A claim is time barred if it is not filed within [the statutory] time limits.").  As such, a Title VII claim will be dismissed as untimely if the plaintiff has not filed a charge with the EEOC within 180 days of the alleged unlawful employment practice *or* filed a charge with an appropriate state or local agency within 300 days.  42 U.S.C. § 2000e-5(e)(1); *Brightman v. Physician Affiliate Grp. of N.Y., P.C.*, No. 20CV4290 (DLC), 2021 WL 1999466, at *4 (S.D.N.Y. May 19, 2021).  In New York, "[p]ursuant to a work-sharing agreement between New York and the federal government, . . . any charge filed with the EEOC is also deemed

filed with the appropriate state agency." *Brightman*, 2021 WL 1999466, at *5 n.2.  Therefore, the 300-day period applies.  *Id.*

Discrete employment actions, such as "termination, failure to promote, denial of transfer, or refusal to hire," are not actionable outside of the 300-day window, even if they are "related to" acts that occurred during that time.  *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Morgan*, 536 U.S. at 113–14).  But where a plaintiff alleges a claim "composed of a series of separate acts that collectively constitute one unlawful practice," such as a hostile workplace, the continuing violation doctrine may apply.  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (cleaned up).  That doctrine provides that, "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period," *Davis-Garett*, 921 F.3d at 42 (quoting *Morgan*, 536 U.S. at 122) (emphasis omitted), then the limitations period "can be tolled[,] . . . thus allowing a district court to consider incidents occurring outside of the 300–day window," *Choi v. Chem. Bank*, 939 F. Supp. 304, 311 (S.D.N.Y. 1996).  To allege that acts are "part of the same unlawful employment practice," the Complaint must plead "*specific* discriminatory policies or mechanisms such as discriminatory lists, or discriminatory employment tests."  *Id.* (emphasis in original) (cleaned up).

Plaintiff alleges that she filed her charges with the EEOC and DHR "[i]n or about August 2020."  Am. Compl. ¶ 80.  Construing this allegation in the "light most favorable" to Plaintiff, the Court assumes for purposes of the pending motion that she filed her charges on August 1, 2020.  *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018).  Accordingly, the Court finds that claims predicated on discrete acts that took place *before* October 6, 2019—300 days before August 1, 2020—are time barred.  This bar includes incidents such as the initial reduction in Plaintiff's job responsibilities, several allegations of isolated accent-mocking, many of Plaintiff's complaints to Condon, and the increase in Plaintiff's workload that occurred after Kearley learned that Plaintiff

had complained about her conduct.  *See Davis-Garett*, 921 F.3d at 42.  The Court further concludes that Plaintiff does not allege any "*specific* discriminatory policies or mechanisms" sufficient to allege a collective practice of unlawful discrimination.  *See Choi*, 939 F. Supp. at 311. Accordingly, the Court will not consider allegations regarding discrete events in connection with the Title VII discrimination claims, but it may still consider them as "background evidence in support of [Plaintiff's] timely" claims.  *Davis-Garett*, 921 F.3d at 42.[10]

Turning to the merits of the Title VII discrimination claims, Plaintiff "must plausibly allege that (1) the [DOE] took adverse action against [her], and (2) [her] race, color, . . . or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

b.   Adverse Actions

The Complaint clearly asserts a variety of unpleasant experiences Plaintiff had at work. However, few of the events of which she complains rise to the level of an adverse action.  For example, Plaintiff complains that she was assigned two to three school visits per day, which she claims was "an unusually large amount."  Am. Compl. ¶ 60.  But this allegation, without more, does not amount to a "materially adverse change in the terms and conditions of employment." *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (cleaned up). Accepting Plaintiff's own allegations as true, it is particularly implausible that this allegation is actionable since Plaintiff herself alleges that she was previously responsible for visiting two schools per day.  Am. Compl. ¶ 49.  Similarly, the Complaint contends that the "input and ideas" of Barr, a non-Hispanic, American-born male, "were sought out," while Plaintiff was not "afforded

---

[10] Plaintiff also references the "reasonably related" doctrine in her Opposition.  Pl. Mem. 14–15.  But that doctrine only applies to retaliation claims that "arise during the pendency of an EEOC investigation or a timely filed federal case."  *Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018) (cleaned up).  There is no such claim here.

the same respect and recognition." (*Id.* ¶¶ 62, 63.)  But "not everything that makes an employee unhappy is an actionable adverse action." *Sank v. City Univ. of New York*, 219 F. Supp. 2d 497, 503 (S.D.N.Y. 2002) (quoting *Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002)).

Generously construing the allegations in Plaintiff's favor, the Complaint *does* plausibly allege three adverse actions in the relevant period: (1) her demotion in May 2020, (2) the DOE's failure to hire Plaintiff to the vacant Assistant Supervisor position, and (3) Condon instructing Plaintiff to work in person in May 2020.[11]

c.     Discriminatory Intent

Finally, to assert a prima facie claim, Plaintiff must allege facts sufficient to show that her race or national origin "was a motivating factor" behind these adverse employment decisions. *Vega*, 801 F.3d at 87.  To plead that the adverse action was "at least in part for a discriminatory reason," Plaintiff must allege either "facts that directly show discrimination," or "facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*.  She fails to do so.

Consider first the demotion.  Plaintiff does not allege that Assistant Supervisors outside of her protected class retained their titles, while she did not.  Similarly, the Complaint does not allege that Condon—the supervisor who actually demoted Plaintiff—criticized Plaintiff's performance "in ethnically degrading terms" or otherwise made "invidious comments about others in [Plaintiff's] protected group." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). Second, the Complaint does not allege that the DOE failed to hire Plaintiff to the vacant Assistant Supervisor *because of* her race or national origin, or even that the individual who was hired to fill

---

[11] While the Court is skeptical that being asked to work in person rises to the level of an adverse action, this arguably constitutes a "reduction in . . . [Plaintiff's] benefits." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019).  As such, this allegation suffices at this preliminary stage.

that role was outside of her protected class.  Finally, the Complaint does not suggest that Plaintiff was asked to work in person *because of* her race or national origin.  In fact, Plaintiff's own allegation is that Condon asked Plaintiff to work in person because she had already "built up immunity" to COVID-19.  Am. Compl. ¶¶ 77–78.

To be sure, the Complaint does allege that Kearley repeatedly mocked the accent of non-American born individuals, including Plaintiff.  But "[d]iscriminatory comments" are only "indicative of intent . . . where the remarks have a causal nexus" to the adverse action at issue. *Shukla v. Deloitte Consulting LLP*, No. 119CV10578AJNSDA, 2020 WL 3181785, at *8 (S.D.N.Y. June 15, 2020) (cleaned up).  There is no causal nexus here because *Condon*—not Kearley—demoted Plaintiff, requested that Plaintiff not work from home, and interviewed Plaintiff for the vacant position.  Accordingly, the Title VII discrimination claims against the DOE are dismissed.

### iv.     *Plaintiff Fails to State a Section 1983 Discrimination Claim*

The Complaint asserts Section 1983 discrimination claims against the DOE and against Kearley and Condon in their individual capacities.[12]

To bring a Section 1983 claim against a municipality under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), Plaintiff must demonstrate "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."  *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citation omitted).  *Monell* expressly prohibits respondeat superior liability.  *Id.* (citing *Monell*, 436 U.S. at 691).  Plaintiff must demonstrate that the DOE "was the moving force behind the injury

---

[12] Discrimination claims under Section 1983 largely "match those under Title VII," *Feliciano v. City of New York*, No. 14 CIV. 6751 PAE, 2015 WL 4393163, at *14 (S.D.N.Y. July 15, 2015), but the 300-day time bar is applicable to Title VII, *not* Section 1983. *See, e.g.*, *Morgan*, 536 U.S. at 108–22 (analyzing time bar with reference to Title VII statute).  The Court therefore analyzes this claim without reference to the Title VII time bar.

alleged" through "its deliberate conduct." *Id.* (cleaned up).  And "a single official can create *Monell* liability only if state law provides that official with authority to set final, municipality-wide policy in the relevant area." *Id.* at 91.

The Complaint does not allege there was "a written municipal policy or an unwritten practice that [was] so widespread as to have the force of law." *Id.* at 98 (cleaned up).  Similarly, although the Complaint alleges that Condon was a "final policymaker and decisionmaker," Am. Compl. ¶ 8, the Second Circuit has concluded that the chancellor of the DOE "appears to be the final policymaker . . . with respect to . . . school administration," *Agosto*, 982 F.3d at 99, and as such a Section 1983 claim will not lie based solely on Condon's conduct.  Thus, the Section 1983 discrimination claim against the DOE is dismissed.

Turning to the claim against the individual Defendants, an individual may be held liable under Section 1983 "only if that individual is personally involved in the alleged deprivation." *Littlejohn*, 795 F.3d at 314 (cleaned up).  Personal involvement may be established by showing the defendant (1) "participated directly in the alleged constitutional violation," (2) "failed to remedy the wrong" after "being informed of the violation," (3) "created a policy or custom under which unconstitutional practices occurred," (4) "was grossly negligent in supervising subordinates who committed the wrongful acts," or (5) "exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *Id.* (citation omitted).  In addition, Plaintiff "must also establish that the supervisor's actions were the proximate cause of the . . . constitutional deprivation," and that the "supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic." *Id.*

As mentioned above, the Complaint pleads three plausible materially adverse actions: the demotion, the failure to hire Plaintiff to the vacant position, and requesting that Plaintiff work in person.  But again, the Complaint alleges that *Condon*—not Kearley—was responsible for each of

these actions.  *Condon* demoted Plaintiff.  *Condon* instructed Plaintiff to work in person.  And *Condon* interviewed Plaintiff for the vacant Assistant Supervisor position.  There are no allegations that any of those adverse actions were taken by Kearley.  As such, the Section 1983 claim against Kearley fails because the Complaint does not allege that Kearley was "personally involved in the alleged deprivation."  *Id.*  The Section 1983 discrimination claim against Kearley is therefore dismissed.

Although she has not been properly served, in the interest of judicial economy, the Court has also analyzed the Section 1983 claim against Condon and concludes that the Complaint similarly fails to state a claim.  Plaintiff alleges that Condon was "personally involved" in the adverse employment decisions, but the Complaint does not suggest that Condon's actions were motivated by "intentional discrimination on the basis of a protected characteristic."  For the reasons outlined above, Plaintiff does not allege facts suggesting that Condon even vaguely considered Plaintiff's race or national origin.  Without any such allegation, the Complaint does not "nudge Plaintiff's claims across the line from conceivable to plausible."  *Beharry v. City of New York*, No. 18-CV-2042 (AJN), 2019 WL 634652, at *4 (S.D.N.Y. Feb. 14, 2019).

### 2.   <u>Retaliation Claims</u>

Plaintiff next claims she was retaliated against by the DOE in violation of Title VII and the ADA, and by all Defendants in violation of Section 1981 and Section 1983, after she filed "formal administrative complaints" with the EEOC and DHR.  Am. Compl. ¶¶ 113–22.  She also alleges that all Defendants retaliated against her for taking "leaves under the [FMLA]."  *Id.* ¶¶ 123–24.

#### i.   *Plaintiff Fails to State Section 1981 Retaliation Claims*

As discussed above, "Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981."  *Walker*, 2021 WL 5401483, at *3 (citing *Jett*, 491 U.S. at 731–34).  The Section 1981 retaliation claims are therefore dismissed against all Defendants.

    *ii.*      *Plaintiff Plausibly States Title VII and ADA Retaliation Claims Against the DOE*

To plead retaliation under Title VII or the ADA,[13] Plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 315–16 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *Morey*, 794 F. App'x at 33 (applying Title VII standard to the ADA).

In evaluating a retaliation claim, the adverse action requirement "is not limited to discriminatory actions that affect the terms and conditions of employment." *Davis-Garett*, 921 F.3d at 43 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). Instead, "a plaintiff may recover for retaliation by showing that a reasonable employee would have found the challenged action materially adverse," meaning it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up). And a "causal connection . . . can be pleaded either directly, by pleading allegations of retaliatory animus directed against the plaintiff by the defendant, or indirectly by timing: protected activity followed closely in time by adverse employment action." *Brightman*, 2021 WL 1999466, at *8 (cleaned up).

The Complaint only pleads two arguably adverse actions after Plaintiff alleges she filed her administrative charges with the EEOC and DHR in August 2020. First, Plaintiff contends that she "continued to be assigned an unusually large number of schools" after returning from her second leave in February 2021. Am. Compl. ¶¶ 87–88. This allegation suggests the *opposite* of

---

[13] As previously noted, the Complaint does not allege that Plaintiff has an actual disability under the ADA. *See supra* Section II.1.i. However, this finding is not necessarily fatal to the ADA retaliation claim because Plaintiff need not establish that she was disabled for this claim to proceed. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). Instead, Plaintiff must only allege that (1) she possessed a good faith, reasonable belief that the DOE violated the ADA, and engaged in a protected activity by reporting that alleged violation in her administrative charges, (2) the DOE was aware of the charges, (3) Plaintiff experienced an adverse employment action, and (4) a causal connection exists between the filing of the charges and adverse action. *Id.*

retaliation.  Indeed, it makes clear that Plaintiff's workload "continued to be" as demanding as it was previously.  *See also* Am. Compl. ¶ 49.

But Plaintiff *has* plausibly pleaded a causal connection between the filing of her administrative charges in August 2020 and the DOE's failure to promote her to the vacant supervisor position in March 2021.  The Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation" and has found that, in some instances, "five months is not too long to find the causal relationship."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).  While there was a seven-month gap between Plaintiff's filing of an administrative charge and the Defendants' failure to hire her to fill the vacant role, "courts apply a more lenient standard to temporal proximity when the allegedly retaliatory act was a non-promotion, as opposed to a termination."  *Feliciano*, 2015 WL 4393163, at *11.  The Complaint alleges that Condon was aware of Plaintiff's charges, and that she sat on the interview panel for the vacant position.  Am. Compl. ¶¶ 90, 91.  Crediting the allegation that Condon made comments about Plaintiff having "the nerve to apply" and that she would not "get" the vacant position, a plausible inference lies that these comments were made in response to, or were motivated by, Plaintiff filing the administrative charges.  *Id.* ¶ 92.  At the pleading stage, the Court finds sufficient—albeit "minimal"—support for the allegation of retaliation.  *Littlejohn*, 795 F.3d at 311.  Accordingly, the motion to dismiss the Title VII and ADA retaliation claims against the DOE is denied.

    *iii.*    <u>*Plaintiff Plausibly States Section 1983 Retaliation Claims*</u>

Because the law evaluates a Section 1983 retaliation claim under a standard that "match[es] those under Title VII," *Feliciano*, 2015 WL 4393163, at *14, the motion to dismiss the Section 1983 retaliation claim against the DOE is also denied.

As for the individual Section 1983 retaliation claims, Plaintiff does not allege that Kearley was "involved in" the decision not to hire her to the vacant position, so that claim is dismissed. *Littlejohn*, 795 F.3d at 320.  The Complaint does, however, allege that Condon was involved in this non-promotion decision.  Although Condon has not appeared, in the interest of judicial economy, the Court finds this claim would survive a motion to dismiss.

> iv.   *Plaintiff Plausibly States an FMLA Retaliation Claim Against the DOE Only*

Plaintiff pleads FMLA retaliation claims against both the DOE and the individual Defendants, arguing that they retaliated against her for taking FMLA leaves.  Am. Compl. ¶¶ 7, 123–24.

The FMLA "protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking of leave pursuant to the FMLA."  *Hale v. Mann*, 219 F.3d 61, 68 (2d Cir. 2000).  To allege that the DOE retaliated against her in violation of the FMLA, Plaintiff must establish that "1) [she] exercised rights protected under the FMLA; 2) [she] was qualified for [her] position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Horsting v. St. John's Riverside Hosp.*, No. 17-CV-3230 (CS), 2018 WL 1918617, at *5 (S.D.N.Y. Apr. 18, 2018) (cleaned up); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016).

Moving Defendants do not contest that Plaintiff satisfies the first two prongs of this test. Instead, they argue that Plaintiff did not experience an adverse action and that, even if she had, the relevant decisionmakers were not aware Plaintiff had taken FMLA leave.  Def. Mem. 23–24.  The Court disagrees.  The Complaint alleges that Plaintiff took two FMLA leaves of absence: one lasting from March to May 2020, and another lasting from November 2020 to February 2021. Plaintiff alleges that Condon was aware of the first FMLA leave, but it does not speak to her

knowledge of the second.  *See* Am. Compl. ¶¶ 70–73.  The Complaint also clearly states that Plaintiff experienced adverse actions closely following each leave.  Plaintiff was demoted the day after returning from her first leave, and soon after, was told to report to work in person, while other employees worked from home.  The month after she returned from her second leave, the DOE failed to hire Plaintiff to the vacant position.  At this preliminary stage, these allegations are sufficient "to establish the requisite causal connection between a protected activity and retaliatory action," with regard to at least her first leave.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010); *see also DeSio v. Singh*, No. 19 CIV. 3954 (JCM), 2021 WL 4449314, at *14–15 (S.D.N.Y. Sept. 28, 2021) (finding that FMLA retaliation claim against employer survived motion for summary judgment where individual manager was aware of employee's FMLA leave and employee was terminated after returning from leave).  Thus, the motion to dismiss the FMLA retaliation claim against the DOE is denied.

To allege FMLA liability against Kearley and Condon individually, Plaintiff must allege facts suggesting that each "had substantial control over the aspects of employment alleged to have been violated."  *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 446 (S.D.N.Y. 2017).  The Complaint includes no such allegations with regard to Kearley.  Kearley did not respond to Plaintiff's email stating she was ready to return to work after her first FMLA leave in May 2020. Am. Compl. ¶¶ 74–75.  In fact, Plaintiff was given a new supervisor when she returned.  *Id.* ¶ 78. Nor does Plaintiff allege that she communicated with Kearley while she was on leave.  Plaintiff therefore does not plausibly allege that Kearley had "substantial control" over Plaintiff's demotion or the decision not to hire her to the vacant position.  The motion to dismiss the FMLA retaliation claim against Kearley is therefore granted.

Unlike Kearley, the Complaint *does* allege that Condon had "substantial control" over the alleged adverse actions.  As such, the Complaint plausibly alleges an FMLA retaliation claim against Condon who, as noted, *see supra* Section I, has not been properly served.

### 3.   Hostile Workplace Claims

Finally, Plaintiff alleges she was subjected to a hostile workplace by the DOE in violation of Title VII and the ADA, and by all Defendants in violation of Section 1981 and Section 1983.

As a preliminary matter, the Court notes that the 300-day time bar does not apply to Plaintiff's hostile workplace claim.  "[T]he entire scope of [this claim], including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Davis-Garett*, 921 F.3d at 42 (cleaned up).  Plaintiff alleges at least one act giving rise to a hostile workplace during the statutory period—Kearley mocked the accent of a non-American born, non-White employee in February 2020, and joked with another colleague about giving Plaintiff "shit to do" in March 2020.  Am. Compl. ¶¶ 54–55, 65.  Although these allegations may not be independently actionable, "a component act" of a hostile workplace claim "need not be 'actionable on its own.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) (quoting *Morgan*, 536 U.S. at 115).  The Court will therefore consider all allegations in connection with the hostile workplace claims.

### i.   *Plaintiff Fails to State a Section 1981 Hostile Workplace Claim*

Because "Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981," *Walker*, 2021 WL 5401483, at *3 (citing *Jett*, 491 U.S. at 731–34), the Section 1981 hostile workplace claim is dismissed against all Defendants.

ii.   *Plaintiff Plausibly States Title VII and Section 1983 Hostile Workplace Claims,*
      *But Fails to State an ADA Hostile Workplace Claim*

To survive the motion to dismiss, Plaintiff must show her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  This standard has objective and subjective components: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).  The allegations must also "be sufficiently continuous." *Id.* (quoting *Raspardo*, 770 F.3d at 114).  Mistreatment at work is actionable "only when it occurs *because of* an employee's protected characteristic." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (cleaned up) (emphasis added). However, "[d]iscriminatory conduct need not be directed at Plaintiff—derogatory comments and actions directed at others may contribute to a hostile work environment experienced by an employee." *Holt v. Dynaserv Indus., Inc.*, No. 14 CIV. 8299 (LGS), 2016 WL 5108205, at *8 (S.D.N.Y. Sept. 19, 2016).

Plaintiff describes several unwelcome and unpleasant interactions with Kearley.  For example, she alleges that Kearley "disrespectfully yelled" at Plaintiff, cut her off in a meeting, and joked with another colleague about giving Plaintiff "shit to do."  Am. Compl. ¶¶ 41, 65.  Plaintiff also contends that "Kearley constantly repeated Plaintiff's sentences in faux accents," and "mimicked the foreign accents of employees." *Id.* ¶¶ 31, 35.

These allegations are a far cry from a manifestly hostile work environment.  However, they do constitute "more than a mere scintilla of evidence" that Plaintiff was subjected to continuous ridicule on account of her race or national origin. *Ochoa v. New York City Dep't of Educ.*, No. 20-

CV-9014 (ALC), 2022 WL 3646208, at *1 (S.D.N.Y. Aug. 24, 2022). Accordingly, the Court finds that, at this stage, Plaintiff states plausible claims for hostile workplace against the DOE under Title VII and Section 1983.

Because the Complaint alleges that Kearley was "personally involved" in creating the hostile environment, Plaintiff plausibly states a hostile workplace claim against her individually. *See Littlejohn*, 795 F.3d at 314. Similarly, the Complaint alleges that, after many complaints by Plaintiff, Condon was on notice of Kearley's behavior. *See id.* In the interest of judicial economy, the Court notes these allegations would be sufficient to survive a motion to dismiss.

However, because Plaintiff has not adequately plead that she "is a person with a disability under the meaning of the ADA," *Morey*, 794 F. App'x at 32, she cannot demonstrate she experienced a hostile workplace "*because of*" a disability, *Rivera*, 743 F.3d at 20 (emphasis added). The ADA hostile workplace claim against the DOE is therefore dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. The following claims are dismissed: all Section 1981 claims against all Defendants; the ADA discrimination and hostile workplace claim against the DOE; the Title VII discrimination claim against the DOE; the Section 1983 discrimination claim against all Defendants; the Section 1983 retaliation claim against Kearley; and the FMLA retaliation claim against Kearley. Additionally, the sex discrimination claim against all Defendants has been voluntarily dismissed.

Plaintiff is directed to serve Condon and to file proof of service on the docket within 30 days of the issuance of this Memorandum Opinion and Order. Once served, Condon shall have 21 days to file an answer or otherwise respond to Plaintiff's amended complaint. The remaining

Defendants are ordered to file an answer no later than 14 days from the issuance of this Memorandum and Order.

The Clerk of the Court is respectfully requested to terminate docket entry 16.

**SO ORDERED.**

**Date:  September 26, 2022**                                        **MARY KAY VYSKOCIL**
**New York, NY**                                                         **United States District Judge**